Jon M. Memmott (#2235)
MEMMOTT & ASSOCIATES
240 S. 200 W., P.O. Box 70
Farmington, Utah 84025
Telephone: (801) 451-5365
Facsimile: (801) 451-5347
Email: jon@memmottlaw.com

Shawn P. Bailey (#9905)
PECK HADFIELD BAXTER & MOORE, LLC
399 North Main Street, Suite 300
Logan, Utah 84321
Telephone: (435)787-9700
Facsimile: (435)787-2455
Email: sbailey@peckhadfield.com

*Attorneys for Defendant Shondell Swenson*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>  Plaintiff,<br><br>  v.<br><br>ASCENT CONSTRUCTION, INC., BRADLEY LEWIS KNOWLTON, SHONDELL SWENSON, J. SCOTT JOHANSEN, AND MARLAINE JOHANSEN,<br><br>  Defendants.<br>―――――――――――――――――<br>SHONDELL SWENSON,<br><br>  Counterclaim/Crossclaim Plaintiff, | **SHONDELL SWENSON'S ANSWER, COUNTERCLAIM, AND CROSSCLAIM**<br><br>Case No. 20-CV-00089-DBB<br>Judge: David B. Barlow |

v.

BRADLEY LEWIS KNOWLTON, ASCENT
CONSTRUCTION, INC., AND ZURICH
AMERICAN INSURANCE COMPANY
AND FIDELITY AND DEPOSIT
COMPANY OF MARYLAND.

Counterclaim/Crossclaim Defendants.

**ANSWER**

For her Answer, Shondell responds as follows to the Complaint of Zurich American

Insurance Company and Fidelity and Deposit Company of Maryland ("Zurich"):

**Responses to Specific Allegations**

1.      Shondell denies paragraph 1 due to lack of knowledge.

2.      As for paragraph 2, Shondell admits that Ascent is a Utah corporation, and that its

offices are located at 310 W. Park Lane, Farmington, Utah 84025. Shondell denies the remainder

of paragraph 2 due to lack of knowledge.

3.      As for paragraph 3, Shondell admits that Brad is a Utah resident, that Brad is

Ascent's president, and that he owns an interest in Ascent. Shondell denies the remainder of

paragraph 3 due to lack of knowledge.

4.      As for paragraph 4, Shondell admits that she is a Utah resident, that Zurich's

Complaint correctly identified her home address, and that she and Brad are divorced. Shondell

denies the remainder of paragraph 4.

5.      Shondell denies paragraph 5 due to lack of knowledge.

6.      Shondell denies paragraph 6 due to lack of knowledge.

7.       As for paragraph 7, Shondell incorporates by reference all of her responses above as though set forth fully herein.

8.       Paragraph 8 is a legal conclusion that requires no response. To the extent that a response is required, Shondell does not contest personal jurisdiction.

9.       Paragraph 9 is a legal conclusion that requires no response. To the extent that a response is required, Shondell denies paragraph 9 due to lack of knowledge.

10.      As for paragraph 10, Shondell admits that Ascent and the individual defendants reside in Utah. Shondell denies the remainder of paragraph 10 due to lack of information.

11.      Paragraph 11 is a legal conclusion that requires no response. To the extent that a response is required, Shondell does not contest venue.

12.      As for paragraph 12, Shondell incorporates by reference all of her responses above as though set forth fully herein.

13.      Shondell denies paragraph 13 due to lack of knowledge.

14.      Shondell denies paragraph 14 due to lack of knowledge.

15.      Shondell denies paragraph 15 due to lack of knowledge.

16.      As for paragraph 16, Shondell denies that the 2001 GIA is enforceable against her because Zurich admits that it has voluntarily released Shondell from the same. Shondell denies the remainder of paragraph 16 due to lack of knowledge.

17.      Shondell denies paragraph 17 due to lack of knowledge.

18.      Shondell denies paragraph 18 as far as she is concerned. Shondell denies the remainder of paragraph 18 due to lack of knowledge.

19.      Shondell denies paragraph 19 as far as she is concerned. Shondell denies the remainder of paragraph 19 due to lack of knowledge.

20.     Shondell denies paragraph 20 due to lack of knowledge.

21.     Shondell denies paragraph 21 due to lack of knowledge.

22.     Shondell denies paragraph 22 as far as she is concerned. Shondell denies the remainder of paragraph 22 due to lack of knowledge.

23.     Shondell denies paragraph 23 due to lack of knowledge.

24.     Shondell denies paragraph 24 as far as she is concerned. Shondell denies the remainder of paragraph 24 due to lack of knowledge.

25.     Shondell denies paragraph 25 due to lack of knowledge.

26.     Shondell denies paragraph 26 due to lack of knowledge.

27.     Shondell denies paragraph 27 due to lack of knowledge.

28.     Shondell denies paragraph 28 as far as she is concerned. Shondell denies the remainder of paragraph 28 due to lack of knowledge.

29.     Shondell denies paragraph 29 due to lack of knowledge.

30.     Shondell denies paragraph 30 due to lack of knowledge.

31.     Shondell denies paragraph 31 due to lack of knowledge.

32.     Shondell denies paragraph 32 due to lack of knowledge.

33.     Shondell denies paragraph 33 due to lack of knowledge.

34.     Shondell denies paragraph 34 due to lack of knowledge.

35.     Shondell denies paragraph 35 due to lack of knowledge.

36.     Shondell denies paragraph 36 due to lack of knowledge.

37.     Shondell denies paragraph 37 due to lack of knowledge.

38.     Shondell denies paragraph 38 due to lack of knowledge.

39.     Shondell denies paragraph 39 due to lack of knowledge.

40.	As for paragraph 40, Shondell admits Zurich made demands in February 2020. Shondell denies the remainder of paragraph 40.

41.	As for paragraph 41, Shondell admits Zurich made demands in March 2020. Shondell denies the remainder of paragraph 41.

42.	As for paragraph 42, Shondell admits Zurich made demands in April 2020. Shondell denies the remainder of paragraph 42.

43.	As for paragraph 43, Shondell admits that Zurich's attorney has emailed her attorney. Shondell denies the remainder of paragraph 43.

44.	As for paragraph 44, Shondell denies any obligations under the GIAs as far as she is concerned. Shondell denies the remainder of paragraph 44 due to lack of knowledge.

45.	Shondell denies paragraph 45 due to lack of knowledge.

46.	Shondell denies paragraph 46 due to lack of knowledge.

47.	Shondell denies paragraph 47 as far as she is concerned. Shondell denies the remainder of paragraph 47 due to lack of knowledge.

48.	Shondell denies paragraph 48 as far as she is concerned. Shondell denies the remainder of paragraph 48 due to lack of knowledge.

49.	As for paragraph 49, Shondell incorporates by reference all of her responses above as though set forth fully herein.

50.	Shondell denies paragraph 50 as far as she is concerned. Shondell denies the remainder of paragraph 50 due to lack of knowledge.

51.	Shondell denies paragraph 51 as far as she is concerned. Shondell denies the remainder of paragraph 51 due to lack of knowledge.

52.	Shondell denies paragraph 52 due to lack of knowledge.

53.     As for paragraph 53, Shondell denies any obligations under the GIAs as far as she is concerned. Shondell denies the remainder of paragraph 53 due to lack of knowledge.

54.     Shondell denies paragraph 54 as far as she is concerned. Shondell denies the remainder of paragraph 54 due to lack of knowledge.

55.     As for paragraph 55, Shondell incorporates by reference all of her responses above as though set forth fully herein.

56.     Shondell denies paragraph 56 due to lack of knowledge.

57.     Shondell denies paragraph 57 due to lack of knowledge.

58.     Shondell denies paragraph 58 due to lack of knowledge.

59.     Shondell denies paragraph 59 due to lack of knowledge.

60.     As for paragraph 60, Shondell incorporates by reference all of her responses above as though set forth fully herein.

61.     Shondell denies paragraph 61 as far as she is concerned. Shondell denies the remainder of paragraph 61 due to lack of knowledge.

62.     Shondell denies paragraph 62 as far as she is concerned. Shondell denies the remainder of paragraph 62 due to lack of knowledge.

63.     Shondell denies paragraph 63 due to lack of knowledge.

64.     Shondell denies paragraph 64 as far as she is concerned. Shondell denies the remainder of paragraph 64 due to lack of knowledge.

65.     Shondell denies paragraph 65 as far as she is concerned. Shondell denies the remainder of paragraph 65 due to lack of knowledge.

66.     Shondell denies paragraph 66 as far as she is concerned. Shondell denies the remainder of paragraph 66 due to lack of knowledge.

67. As for paragraph 67, Shondell incorporates by reference all of her responses above as though set forth fully herein.

68. Shondell denies paragraph 68 as far as she is concerned. Shondell denies the remainder of paragraph 68 due to lack of knowledge.

69. Shondell denies paragraph 69 as far as she is concerned. Shondell denies the remainder of paragraph 69 due to lack of knowledge.

70. Shondell denies paragraph 70 due to lack of knowledge.

71. Shondell denies paragraph 71 as far as she is concerned. Shondell denies the remainder of paragraph 71 due to lack of knowledge.

72. Shondell denies paragraph 72 as far as she is concerned. Shondell denies the remainder of paragraph 72 due to lack of knowledge.

73. Shondell denies paragraph 73 as far as she is concerned. Shondell denies the remainder of paragraph 73 due to lack of knowledge.

74. Shondell denies paragraph 74 as far as she is concerned. Shondell denies the remainder of paragraph 74 due to lack of knowledge.

75. Shondell denies paragraph 75 as far as she is concerned. Shondell denies the remainder of paragraph 75 due to lack of knowledge.

76. Shondell denies paragraph 76 as far as she is concerned. Shondell denies the remainder of paragraph 76 due to lack of knowledge.

77. As for paragraph 77, Shondell incorporates by reference all of her responses above as though set forth fully herein.

78. Shondell denies paragraph 78 as far as she is concerned. Shondell denies the remainder of paragraph 78 due to lack of knowledge.

79.     Shondell denies paragraph 79 as far as she is concerned. Shondell denies the remainder of paragraph 79 due to lack of knowledge.

80.     Shondell denies paragraph 80 as far as she is concerned. Shondell denies the remainder of paragraph 80 due to lack of knowledge.

81.     Shondell denies paragraph 81 as far as she is concerned. Shondell denies the remainder of paragraph 81 due to lack of knowledge.

82.     Shondell denies paragraph 82 as far as she is concerned. Shondell denies the remainder of paragraph 82 due to lack of knowledge.

83.     Shondell denies paragraph 83 as far as she is concerned. Shondell denies the remainder of paragraph 83 due to lack of knowledge.

84.     Shondell denies paragraph 84 as far as she is concerned. Shondell denies the remainder of paragraph 84 due to lack of knowledge.

85.     Paragraph 85 appears to be a note and not a proper allegation. To the extent that Paragraph 85 constitutes an allegation that requires a response: Shondell denies paragraph 85 as far as she is concerned. Shondell denies the remainder of paragraph 85 due to lack of knowledge.

86.     As for paragraph 86, Shondell incorporates by reference all of her responses above as though set forth fully herein.

87.     Shondell denies paragraph 87 as far as she is concerned. Shondell denies the remainder of paragraph 87 due to lack of knowledge.

88.     Shondell denies paragraph 88 as far as she is concerned. Shondell denies the remainder of paragraph 88 due to lack of knowledge.

89.     Shondell denies paragraph 89 as far as she is concerned. Shondell denies the remainder of paragraph 89 due to lack of knowledge.

90.     Shondell denies paragraph 90 as far as she is concerned. Shondell denies the remainder of paragraph 90 due to lack of knowledge.

91.     Zurich's "Conclusion" contains no factual allegations that require a response. To the extent that a response is required, Shondell denies each and every portion and element of Zurich's "Conclusion."

### Affirmative Defenses

1.     Zurich's Complaint fails to state a claim on which relief can be granted.

2.     Zurich's claims against Shondell fail due to duress attributable to Zurich under the law of agency.

3.     Zurich's claims against Shondell fail due to fraud/fraudulent inducement to contract attributable to Zurich under the law of agency as follows:

| Element | Particular Allegations |
|---|---|
| (1) a representation was made | As for the first signature page, Brad/Ascent told Shondell that it only affected Ascent and could not affect her personally. <br><br> As for the second signature page, Brad/Ascent told Shondell that: <br> (1) the signature page that she had previously signed was not properly notarized; <br> (2) that Ascent needed her to sign and notarize that signature page again; and <br> (3) that the signature page they presented to her was the same signature page she had signed previously. <br><br> Taking these statements together, Brad/Ascent told Shondell that there was only one agreement and that her second signature merely corrected a technical problem with the first signature. |
| (2) concerning a presently existing material fact | Ascent's representations concerned presently existing material facts, e.g.: <br> (1) the nature of the agreement associated with the signature page (e.g., that it only affected Ascent and could not affect Shondell personally); and |

| | (2) that there was only one agreement and that Shondell's second signature merely corrected a problem with the prior, identical signature page. |
|---|---|
| (3) which was false | Assuming *arguendo*, the truthfulness of Zurich's positions (e.g., that the agreements affect Shondell personally, that there are two agreements), then Brad/Ascent's representations to Shondell must have been false. |
| (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, | Assuming *arguendo*, the truthfulness of Zurich's positions (e.g., that the agreements affect Shondell personally, that there are two agreements), then it can be reasonably inferred that Brad/Ascent knew or should have known that its representations to Shondell were false. |
| (5) for the purpose of inducing the other party to act upon it | Brad/Ascent's false statements were made in the context of their demands that Shondell must immediately sign the signature pages. |
| (6) that the other party, acting reasonably and in ignorance of its falsity, | Shondell reasonably believed Brad/Ascent's false statements. She had no reason to disbelieve them. Moreover, she had no significant business education or experience. She has limited understanding of the construction industry, surety companies, and bonds. She has never been an owner of Ascent, and she had no involvement in its business. She was not represented by counsel at the time she signed the first signature page. She never had an opportunity to read an agreement associated with the signature page. The story Ascent told her about the second signature page was inherently plausible because: (1) no notary was present when she signed the first time, and (2) nothing on the second signature page itself would have alerted Shondell that Ascent's representations were not truthful. |
| (7) did in fact rely upon it | Shondell believed and relied upon Brad/Ascent's false statements. |
| (8) and was thereby induced to act | Shondell signed the signature page twice in reliance on Brad/Ascent's false statements. |
| (9) to that party's injury and damage. | Shondell has suffered economic and non-economic damages as a direct and proximate result of the fraud/fraudulent inducement to contract |

4.     Zurich's claims against Shondell fail because she had no opportunity to read the agreements before signing them.

5.     Zurich's claims against Shondell fail because Zurich is estopped from pursuing those claims due to its promises that it would not take action against Shondell.

6.      Zurich's claims against Shondell fail due to a lack of privity and/or because there was no meeting of the minds, intent to form an agreement, or mutual manifestation of asset between Zurich and Shondell.

7.      Zurich's claims against Shondell fail because Zurich released and/or waived one or more of the agreements with respect to Shondell and/or there was an accord and satisfaction with respect to Shondell.

8.      Zurich's claims against Shondell fail due to a lack of consideration.

9.      Zurich's claims against Shondell fail due to Zurich's unclean hands.

10.     Zurich's claims against Shondell fail due to Zurich's torts and other wrongful conduct.

11.     In the event that Shondell is determined to be liable to Zurich, Shondell is entitled to a setoff or offset.

12.     Zurich has failed to mitigate its alleged damages.

13.     Zurich's claims against Shondell fail under the doctrine of laches.

14.     Zurich's claims against Shondell fail because they would result in an unjust enrichment.

15.     Shondell reserves the right to amend this Answer before, during, and after trial to the full extent allowed by the law, to assert additional responses and/or affirmative defenses as appropriate under the circumstances.

## COUNTERCLAIM/CROSSCLAIM

For her Counterclaim and Crossclaim, Shondell alleges as follows against Zurich, Brad Knowlton, and Ascent Construction, Inc.:

### General Allegations

### Parties

1.      Shondell Swenson ("Shondell") is an individual who resides in Utah.

2.      Zurich American Insurance Company and Fidelity and Deposit Company of Maryland ("Zurich") is the plaintiff in this matter. On information and belief, Zurich is an insurance company that has entered into certain agreements with Ascent Construction, Inc. and others.

3.      Brad Knowlton ("Brad") is an individual who resides in Utah.

4.      Ascent Construction, Inc. ("Ascent") is a construction company based in Utah.

### Jurisdiction and Venue

5.      Zurich has voluntarily subjected itself to personal jurisdiction in this Court by filing this lawsuit.

6.      This Court has personal jurisdiction over Brad and Ascent. Brad resides in Utah, and he committed the acts alleged herein in Utah. Ascent is based in Utah, and it committed the acts alleged herein in Utah.

7.      This Court has supplemental jurisdiction over this Counterclaim/Crossclaim pursuant to 28 U.S. Code § 1367 because Shondell's claims are so related to the claims in this action that they form part of the same case or controversy.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Shondell's claims occurred in or around this district.

## General Allegations

### a. Shondell Has Never Been Involved in Ascent

9. Shondell has never owned an interest in Ascent.

10. Shondell has never been directly involved in any aspect of Ascent's business.

11. Shondell filed for divorce against Brad Knowlton ("Brad") in June 2017 shortly after she and Brad separated, and they are now divorced.

12. Brad is the president of Ascent, and Brad's Ascent ownership interest in Ascent was awarded to Brad in the divorce.

### b. Brad Must Indemnify Shondell With Respect to Ascent

13. The divorce decree orders Brad to indemnify Shondell with respect to the assets that were awarded to him, including Ascent and a related asset called ShoniK, LLC.

14. In particular, the decree states:

Brad shall indemnify and hold Shondell harmless from any obligation related to any asset or interest awarded to Brad through this Judgment and Decree of Divorce, including without limitation the marital interests in Ascent Construction and ShoniK. Brad shall also indemnify and hold Shondell harmless for any associated legal fees or costs of defending herself against claims related to any asset or interest awarded to Brad through this Judgment and Decree of Divorce. For example, if Shondell were required to personally cover any of the obligations under the mortgage related to the Ascent Construction headquarters building, then Brad shall indemnify and hold Shondell harmless with respect to that obligation and any related legal fees or costs. However, Brad shall have no obligation to indemnify or hold Shondell harmless or pay for legal fees or costs associated with any claim or determination that Shondell allegedly committed or committed malfeasance, misconduct, or other wrongful acts.

15. Therefore, Brad is obligated to indemnify Shondell with respect to: (1) any claim against Shondell related to Ascent's bonds, and (2) Shondell's costs and fees incurred defending this lawsuit.

**c. Shondell's Knowledge of Ascent and Business in General Is Limited**

16.     Shondell's knowledge of Ascent has always been limited, and it has been even more limited since she filed for divorce over three years ago.

17.     Shondell has not been involved in the bad acts Zurich alleges, including refusals to provide information and/or misappropriation of funds; moreover, she has never had access to Ascent funds, and she has never received funds directly from Ascent.

18.     Shondell has no significant business education or experience.

19.     Shondell's knowledge of the construction industry, surety companies, and bonds is limited.

**d. Shondell Never Had an Opportunity to Read the Agreements**

20.     Zurich claims Shondell signed two agreements related to construction projects called "Sugarmont" and "Gardner Mill" in June 2017.

21.     Shondell did not sign those agreements.

22.     On the contrary, as a result of Brad/Ascent's improper threats and lies, she signed a signature page twice in June/July 2017.

23.     However, Shondell had never seen the agreements, and she never had an opportunity to read the agreements before she signed the signature page.

24.     Zurich had no contact, dealings, or communications with Shondell at any point in 2017, when it allegedly formed agreements with Shondell.

25.     Zurich made no attempt to provide a copy of any agreement to Shondell in the relevant time period.

26.     Zurich made no effort to directly secure Shondell's signatures on any document.

27.     Zurich exclusively relied on Brad/Ascent to obtain Shondell's signatures, who perpetrated the duress and fraud alleged herein on Zurich's behalf and for Zurich's benefit.

28.     Brad/Ascent also never attempted to provide a copy of any agreement to Shondell at any point in time.

**e. Shondell's Signatures Were Obtained by Duress**

29.     Brad had repeatedly threatened to shoot Shondell shortly before demanding that Shondell sign a signature page.

30.     Brad also boasted that he was "smart enough to get away with it" and that he would "bury [Shondell's] body in concrete at a job site."

31.     Brad had a violent temper and gun collection sufficient to carry out his threats.

32.     Brad's explicit threats were accompanied by veiled threats of violence.

33.     Brad's violent threats were accompanied by various other forms of outrageous and abusive conduct, including: (1) slanderous claims that Shondell had Alzheimer's disease and had "gone crazy," (2) abusive language, (3) displays of extreme anger, and (4) repeated attempts to undermine Shondell's efforts to permanently separate herself from Brad.

34.     As a result of Brad's threats and other menacing conduct, Shondell lived for months in a constant state of terror that Brad would attempt to injure or kill her.

35.     Shondell's terror was so intense that she could not stand by a window or go outside without fearing that Brad would shoot her as he had threatened.

36.     Shondell was in this state of terror when Brad: (1) demanded that Shondell must immediately sign the signature page, and (2) claimed that everyone at Ascent that Shondell cared about would lose their jobs if she did not sign the signature page right then and there.

37.     Shondell was not represented by counsel at that time.

38.     Due to Brad's threats and other menacing behavior, Shondell concluded that she could not ask questions, delay, or refuse to sign without endangering herself.

39.     Thus, Shondell signed the signature page to preserve her own safety.

**f. Shondell's Signatures Were Obtained by Fraud**

40.     Shondell signed the same signature page twice—once in June 2017 and once in July 2017. On both occasions, Brad/Ascent made false statements to Shondell regarding the signature page.

41.     To induce Shondell to sign the signature page in June 2017, Brad/Ascent told Shondell that it only affected Ascent and could not affect her personally.

42.     To induce Shondell to sign the signature page again in July 2017, Ascent told Shondell that: (a) the signature page that she had previously signed was not properly notarized; (b) that Ascent needed her to sign and notarize that signature page again; and (c) that the signature page they presented to her was the same signature page she had signed previously.

43.     In light of this lawsuit, Brad/Ascent must have lied both when they told Shondell that: (1) the agreement could not affect her personally, and (2) there was only one agreement and that her second signature merely corrected a technical problem with the first signature.

44.     These false statements were made in the context of Brad's threats of violence, the genuine fear those threats engendered in Shondell, and Brad/Ascent's demands that Shondell must immediately sign the signature page.

45.     Shondell reasonably believed Brad/Ascent's false statements. Shondell had no reason to disbelieve them. Moreover: (a) she had no significant business education or experience, (b) she had limited understanding of the construction industry, surety companies, and bonds, (c)

she had never been an owner of Ascent, (d) she had no involvement in Ascent's business, (e) she was not represented by counsel when she signed the first signature page, and (f) she never had an opportunity to read any agreement associated with the signature page.

46.     Moreover, Ascent's false statements concerning the second signature page were inherently plausible because: (a) no notary was present when Shondell signed the first time, and (b) nothing on the second signature page itself alerted Shondell that Ascent's representations were not truthful.

47.     Shondell believed and relied upon Brad/Ascent's false statements, and she signed the signature page twice in reliance on Brad/Ascent's false statements.

**g. Brad and Ascent Were Zurich's Agents With Respect to Shondell**

48.     Zurich had no contact, dealings, or communications with Shondell in 2017, the alleged time of contract formation.

49.     Zurich relied exclusively on Brad/Ascent to obtain Shondell's signatures on Zurich's behalf.

50.     On information and belief, Zurich granted actual authority to Brad/Ascent to deal with Shondell concerning the agreements.

51.     Zurich cloaked Brad/Ascent with apparent authority to deal with Shondell concerning the agreements.

52.     Zurich ratified the transaction Brad/Ascent caused Shondell to enter into with Zurich by retaining the benefits of the transaction and suing Shondell to enforce the agreements.

53.     Accordingly, Zurich is liable for Brad/Ascent's actions perpetrated against Shondell as alleged herein while acting as Zurich's agent.

**h. Zurich Released Shondell From the 2001 Agreement**

54. Zurich's Complaint references an agreement formed in 2001.

55. Zurich voluntarily released Shondell from the 2001 agreement, and thus that agreement is not enforceable against Shondell.

**i. Zurich Admitted Shondell Was Not a Party to the Agreements**

56. Zurich never asked Shondell for any financial information.

57. Shondell never provided any financial information to Zurich.

58. In the process of Shondell's divorce from Brad, she learned that Brad had provided personal financial statements to Zurich.

59. Shondell was not involved in the preparation of those personal financial statements, and I was not aware of their contents.

60. Shondell attempted to obtain copies of those personal financial statements for purposes of collecting evidence of martial assets for her divorce trial.

61. Shondell's attorneys identified the Utah office where Ascent had apparently obtained its surety bonds: Marsh in Salt Lake City.

62. Shondell went to the Marsh office in Salt Lake and requested copies of Brad's personal financial statements.

63. A woman named Tina, who is apparently an agent for Zurich, refused to provide Brad's personal financial statements to Shondell because, in her words, Shondell was not a party to Ascent's bond agreements nor was she a "principal" of Ascent.

**j. Zurich Obtained Valuable Benefits To a Third Party's Detriment Through Its Promise That It Would Take No Action Against Shondell**

64. Zurich admits that it employed an "independent consultant" to obtain information about Ascent.

65. That consultant was Shondell's son, Dallas, who had previously been a long-time employee of Ascent.

66. Zurich promised Dallas that it would not sue Shondell if Dallas helped Zurich.

67. Acting in reliance on that promise, Dallas did in fact provide substantial help and information to Zurich.

## Causes of Action

## Claim One: Declaratory Judgment

68. Shondell incorporates the preceding allegations as though fully alleged herein.

69. Shondell is entitled to declaratory judgment that the agreements Zurich seeks to enforce are unenforceable against Shondell on grounds of duress.

70. Shondell is entitled to declaratory judgment that the agreements Zurich seeks to enforce are unenforceable against Shondell on grounds of fraud (as alleged with particularity herein).

71. Shondell is entitled to declaratory judgment that the agreements Zurich seeks to enforce are unenforceable against Shondell because she had no opportunity to read the agreements.

72. Shondell is entitled to declaratory judgment that the 2001 agreement is not enforceable against Shondell because Zurich voluntarily released Shondell from the agreement.

73. Shondell is entitled to declaratory judgment that Brad/Ascent were Zurich's agents with respect to the 2017 agreements, and therefore Zurich is liable for Brad/Ascent's actions perpetrated against Shondell related to the same.

74.     Shondell is entitled to declaratory judgment that Brad must answer for any

liability imposed against Shondell in this matter, as well as Shondell's attorney's fees and costs

incurred in this matter, due to Brad's indemnification obligation.

**Claim Two: Deceit/Fraud/Fraudulent Inducement to Contract**

75.     Shondell incorporates the preceding allegations as though fully alleged herein.

76.     The counterclaim/crossclaim defendants are liable to Shondell for

deceit/fraud/fraudulent inducement to contract as follows:

| Element | Particular Allegations |
|---|---|
| (1) a representation was made | As for the first signature page, Brad/Ascent told Shondell that it only affected Ascent and could not affect her personally.<br><br>As for the second signature page, Brad/Ascent told Shondell that:<br>(1) the signature page that she had previously signed was not properly notarized;<br>(2) that Ascent needed her to sign and notarize that signature page again; and<br>(3) that the signature page they presented to her was the same signature page she had signed previously.<br><br>Taking these statements together, Brad/Ascent told Shondell that there was only one agreement and that her second signature merely corrected a technical problem with the first signature. |
| (2) concerning a presently existing material fact | Ascent's representations concerned presently existing material facts, e.g.:<br>(1) the nature of the agreement associated with the signature page (e.g., that it only affected Ascent and could not affect Shondell personally); and<br>(2) that there was only one agreement and that Shondell's second signature merely corrected a problem with the prior, identical signature page. |
| (3) which was false | Assuming *arguendo*, the truthfulness of Zurich's positions (e.g., that the agreements affect Shondell personally, that there are two agreements), then Brad/Ascent's representations to Shondell must have been false. |
| (4) which the representor either (a) knew to be false or | Assuming *arguendo*, the truthfulness of Zurich's positions (e.g., that the agreements affect Shondell personally, that |

| (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, | there are two agreements), then it can be reasonably inferred that Brad/Ascent knew or should have known that its representations to Shondell were false. |
|---|---|
| (5) for the purpose of inducing the other party to act upon it | Brad/Ascent's false statements were made in the context of their demands that Shondell must immediately sign the signature pages. |
| (6) that the other party, acting reasonably and in ignorance of its falsity, | Shondell reasonably believed Brad/Ascent's false statements. She had no reason to disbelieve them. Moreover, she had no significant business education or experience. She has limited understanding of the construction industry, surety companies, and bonds. She has never been an owner of Ascent, and she had no involvement in its business. She was not represented by counsel at the time she signed the first signature page. She never had an opportunity to read an agreement associated with the signature page. The story Ascent told her about the second signature page was inherently plausible because: (1) no notary was present when she signed the first time, and (2) nothing on the second signature page itself would have alerted Shondell that Ascent's representations were not truthful. |
| (7) did in fact rely upon it | Shondell believed and relied upon Brad/Ascent's false statements. |
| (8) and was thereby induced to act | Shondell signed the signature page twice in reliance on Brad/Ascent's false statements. |
| (9) to that party's injury and damage. | Shondell has suffered economic and non-economic damages as a direct and proximate result of the fraud/fraudulent inducement to contract |

**Claim Three: Tortious Interference With Economic Relations**

77. Shondell incorporates the preceding allegations as though fully alleged herein.

78. The counterclaim/crossclaim defendants interfered with Shondell's existing and/or potential economic relations through improper means, including without limitation the duress, fraud, and other wrongful acts described herein.

79. Shondell suffered economic and non-economic damages as a direct and proximate result of the counterclaim/crossclaim defendants' tortious interference with her economic relations.

## Claim Four: Promissory Estoppel

80.     Shondell incorporates the preceding allegations as though fully alleged herein.

81.     Zurich promised it would not sue Shondell if her son provided certain help to Zurich related to this matter.

82.     Acting in reasonable reliance on this promise, Shondell's son actually provided certain help to Zurich related to this matter to his detriment.

83.     Therefore, Shondell is entitled to judgment against Zurich to the effect that Zurich is estopped from pursuing its claims against Shondell.

## Claim Five: Indemnification

84.     Shondell incorporates the preceding allegations as though fully alleged herein.

85.     The decree entered in Brad and Shondell's divorce is a valid and binding court order.

86.     Under the decree, Brad is obligated to indemnify Shondell with respect to any claim related to Ascent, including Shondell's attorney's fees and costs incurred in defending such a claim.

87.     Accordingly, Shondell is entitled to judgment against Brad for the full amount of any liability that may be imposed against her in this matter plus her attorney's fees and costs incurred in defending/litigating this matter.

88.     Moreover, Shondell is entitled to temporary and permanent injunctive relief against Brad appropriate to enforce Brad's indemnification obligation.

## Claim Six: Breach of Fiduciary Duties

89.     Shondell incorporates the preceding allegations as though fully alleged herein.

90.     Brad owed fiduciary duties to Shondell in 2017 because: (1) the parties were in a confidential relationship as husband and wife, (2) Brad was a sophisticated businessman with extensive knowledge of the transactions at issue, (3) Shondell had no significant business education or experience and her understanding of the transactions at issue was extremely limited. Accordingly, Brad was in a position to exercise and did exercise influence over Shondell with respect to the transactions.

91.     Brad breached the fiduciary duties he owed to Shondell by taking the wrongful actions alleged herein, including without limitation duress, fraud, and other wrongful acts.

92.     Shondell suffered economic and non-economic damages, and was forced to incur attorney's fees and costs, as a direct and proximate result of Brad's breach of fiduciary duties.

**Jury Demand**

Shondell hereby demands a trial by jury on all claims, counterclaims, crossclaims, and defenses.

**Prayer for Relief**

Wherefore, Shondell prays for the following relief:

1.      That Zurich's claims against her be dismissed with prejudice, with Zurich taking nothing thereby.

2.      Declaratory judgment as outlined herein.

3.      Economic damages.

4.      Non-economic damages.

5.      Temporary and permanent injunctive relief and/or specific enforcement appropriate to enforce Brad's indemnification obligation.

6.      Punitive damages.

7.     Attorney's fees, costs, interest, and such other and further relief as the Court deems just.

DATED this 14th day of August, 2020.

PECK HADFIELD BAXTER & MOORE, LLC

__/s/   Shawn P. Bailey_____
Shawn P. Bailey
*Attorneys for Defendant Shondell Swenson*

## Certificate of Service

I certify that I caused the foregoing document to be served on the following parties by filing the same through the CM/ECF system:

Connor L. Cantrell
The Hustead Law Firm
*Attorneys for Zurich American Insurance Company and Fidelity and Deposit Company of Maryland*

I certify that I caused the foregoing document to be served on the following parties by email to their last known legal counsel:

Ryan Rudd
The Rudd Firm
*Attorneys for Ascent Construction, Inc. and Brad Knowlton*

David Wahlquist
Kirton McConkie
*Attorneys for Scott Johansen and Marlane Johansen*

PECK HADFIELD BAXTER & MOORE, LLC

___/s/   *Shawn P. Bailey*_____
Shawn P. Bailey
*Attorneys for Defendant Shondell Swenson*