Darrel J. Bostwick (4543)
Bruce M. Pritchett (6781)
Meagan L. Rudd (10364)
Jonathan R. Rudd (11422)
Nick S. Nielsen (15902)
THE RUDD FIRM, P.C.
10150 Centennial Parkway, Suite 150
Sandy, Utah 84070
Telephone: (801) 676-5337
dbostwick@ruddfirm.com, bpritchett@ruddfirm.com,
meagan@ruddfirm.com, jonathan@ruddfirm.com, nnielsen@ruddfirm.com
*Attorneys for Defendants Ascent Construction, Inc. and Brad L. Knowlton*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>Plaintiff,<br><br>vs.<br><br>ASCENT CONSTRUCTION, INC., BRAD L. KNOWLTON, SHONDELL SWENSON (F/K/A SHONDELL KNOWLTON), J. SCOTT JOHANSEN, and MARLAINE JOHANSEN,<br><br>Defendants. | Civil Case No. 1:20-cv-00089-DBB<br><br>**DEFENDANTS ASCENT AND BRAD KNOWLTON'S OPPOSITION TO ZURICH'S MOTION FOR TRO/PRELIMINARY INJUNCTION**<br><br>Judge David B. Barlow |

Defendants Ascent Construction, Inc. ("Ascent") and Brad L. Knowlton ("Brad") (collectively "Defendants"), by and through undersigned counsel, The Rudd Firm, P.C., and pursuant to DUCivR 7-1 and Rule 65 of the Federal Rules of Civil Procedure, hereby submit the following Opposition to Plaintiff Zurich American Insurance Company and Fidelity and Deposit

Company of Maryland's ("Plaintiff" or "Zurich") Motion for Temporary Restraining Order / Permanent Injunction [Dkt. No. 18].

## **TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………..…….…..……..8

II.     STATEMENT OF FACTS……………………………………………………..........9

III.    PRELIMINARY INJUNCTION STANDARD…………………………………….13

IV.     ARGUMENTS AND AUTHORITIES………………………………...……...…15

        A. Heightened Scrutiny Applies to This Disfavored Motion……………..………….15

           1.  *The Motion is disfavored as the relief sought will change the status quo*…….…15

           2.  *The Motion is disfavored as the relief sought requires affirmative*
               *acts and, therefore, is a mandatory injunction*…………………………………..16

           3.  *The Motion is disfavored as the preliminary injunction, if granted, will afford*
               *Zurich substantially all the relief it might be entitled to after a full trial on the*
               *merits*………………………………………………………………..…17

        B. Injunctive Relief Is Not Available Against the Individual Indemnitors……………..19

        C. Zurich Failed to Prove That It Will Suffer Immediate and Irreparable Harm in the
           Absence of Preliminary Injunctive Relief……………………………………..…20

           1.  *The irreparable harm standard for preliminary injunctions*…………………..21

           2.  *Zurich's significant delay in seeking preliminary relief negates or, at the very least,*
               *severely undercuts any purported immediate or irreparable harm*………………23

           3.  *The central relief Zurich seeks—deposit of $10 million—is classic monetary relief,*
               *which means Zurich will not and has not suffered irreparable harm*……………25

           4.  *The injunction clauses in the GIAs relating to irreparable harm are not*
               *enforceable*……………………………………………………………..25

5.  *Zurich's position that Brad's purported failure to provide collateral security causes irreparable harm and that money damages are incapable of alleviating injury if Ascent and Brad are not forced to place Zurich in funds is untenable*……………27

6.  Quia Timet *and Delayed Exoneration Are Not Irreparable Harm*………………29

7.  *Zurich already has enough collateral from Ascent and, therefore, will not suffer immediate or irreparable harm*……………………………………………………..29

D.  Zurich Has Failed to Prove It Will Likely Prevail on the Merits……………………..30

E.  The Balance of Harms Weighs Against Zurich and In Favor of Denying the Requested Preliminary Injunction……………………………………………………………..32

F.  Zurich Makes No Showing That an Injunction Would Not Be Adverse to the Public Interest……………………………………………………………………………..34

V.    CONCLUSION………………………………………………………………. ..……34

# **TABLE OF AUTHORITIES**

## **Cases**

*Allen Organ Co. v. CBS, Inc.*, No. 84 Civ. 3856 (SWK), 1986 WL 4901, at *2
(S.D.N.Y. Apr. 21, 1986) ..........................................................................................................21

*Allied World Specialty Ins. Co. v. Abat Lerew Constr., LLC*, No. 8:16CV545,
2017 WL 1476131, at *4 (D. Neb. Apr. 24, 2017).....................................................................25

*American Bonding Co. v. Nelson*, 763 P.2d 814, 816 (Utah Ct. App. 1988) ...............................16

*Arnett v. Howard*, No. 2:13-CV-591, 2014 U.S. Dist. LEXIS 38633 ..........................................10

*Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 32 (2d. Cir. 1991) ....................................26, 29

*Bristol Tech. Inc. v. Microsoft Corp.*, 42 F.Supp.2d 153, 162 (D. Conn. 1998) .........................21

*Cincinnati Ins. Co. v. Rocky Mtn. Water Works, LLC*, Civil Action No. 20-cv-00146-CMA-
KLM, 2020 WL 978744, at *2 (D. Colo. Feb. 28, 2020 ...............................................18, 25, 26

*Citibank, N.A., v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)...............................................20, 21

*Conn. Gen. Life Ins. Co. v. New Images*, 321 F. 3d 878, 881 (9th Cir. 2003).............................14

*Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011) ...............................19

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154
(10th Cir. 2001) ....................................................................................................................15, 24

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260
(10th Cir. 2004) ....................................................................................................................11, 18

*Ervin v. Lowe's Companies, Inc.*, 2005 UT App 463, ¶ 10, 128 P.3d 11.....................................16

*Fire Ins. Exchange v. Oltmanns*, 2012 UT App 230, ¶¶ 6-7, 285 P.3d 802 .................................16

*First Health Group Corp v. Nat'l Prescription Adm'rs, Inc.*, 155 F.Supp.2d 194
(M.D. Pa. 2001) ....................................................................................................................23, 24, 28

*Free Mot. Fitness, Inc. v. Wells Fargo Bank W., NA*, 2009 UT App 120, ¶ 18, 208 P.3d 1066 ...16

*Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418-20 (8th Cir. 1987)...................................22

*Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007)......................10

*Gonzalez v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 546 U.S. 418, 439 (2006).........12

*Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1262 (10th Cir. 2003) ......................18

*Grupo Mexicano de Desarrollo SA v. Alliance Bond Fund Inc.*, 527 U.S. 308 (1999) ..........14, 22

*GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) ...........................................10, 20, 22

*Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) .........................................18

*Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1101 (10th Cir. 2018) ..............19

*Jacobsen Const. Co. v. Blaine Const. Co., Inc.*, 863 P.2d 1329, 1331 (Utah Ct. App. 1993).......17

*Kan. Health Care Assoc., Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1544
(10th Cir. 1994) ................................................................................................................21

*Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588 (6th Cir. 2014)......................................................11

*Kingsford Prods. Co. v. Kingsford, Inc.*, 674 F.Supp. 1428, 1431 (D. Kan. 1987) .....................21

*Li v. Lewis*, Case No. 1:20-CV-12 TS-PMW, 2020 WL 3218788, at *2
(D. Utah June 15, 2020)....................................................................................................19

*M.H. Walker Realty Co. v. Am. Surety Co. of New York*, 211 P. 998 (Utah 1922) ......................16

*Mazurka v. Armstrong*, 520 U.S. 968, 972 (1997) ......................................................................11

*Mid-States Ag-Chem Co. v. Atchison Grain Co.*, 750 F.Supp. 465, 467 (D. Kan. 1990) .......21, 22

*Nature's Life, Inc. v. Renew Life Formulas, Inc.*, No. 2:05 CV 162, 2006 WL 62829, at *5
(D. Utah Jan. 11, 2006).....................................................................................................20

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975
(10th Cir. 2004) ................................................................................................................12

*Ohio Cas. Ins. Co. v. Campbell's Siding & Windows*, No. 1:15-CV-00255-EJL, 2015WL
    6758137, at *3 (D. Idaho Nov. 4, 2015)...........................................................................25

*Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) .........18, 19

*Religious Tech. Ctr. v. F.A.C.T.NET, Inc.*, 901 F. Supp. 1519, 1523 (D. Colo. 1995) ................11

*Rexnord, Inc. v. Laitram Corp.*, 628 F.Supp. 467, 474 (E.D. Wis. 1986)......................................21

*RoDa Drilling Co. v. Siegal*, 552 F. 3d 1203, 1208 (10th Cir. 2009) ...........................................23

*Schrier v. Univ. of Colo.*, 427 F .3d 1253, 1258 (10th Cir. 2005)...............................11, 12, 13, 19

*Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 651-52 (10th Cir. 2004) .....................29

*Travelers Cas. & Sur. Co. of Am. v. W.P. Rowland Constructors Corp.*, No. CV 12-00390-PHX-FJM, 2012 WL 1718630, at *3 (D. Ariz. May 15, 2012)..........................................................25

*Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986) .........................................................................................................12, 13

*U.S. v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999).................................................13

*United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 495-96 (4th Cir. 1999).........22

*University of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ...................................................12, 14

*Utah Gospel Mission v. Salt Lake City Corp.*, 316 F.Supp.2d 1201, 1221 (D. Utah 2004)..........20

*Utah State Bldg. Bd. v. Walsh Plumbing Co.*, 399 P.2d 141, 143 (Utah 1965)............................16

*Valdez v. Applegate*, 616 F.2d 570 (10th Cir. 1980) ....................................................................11

*Village of Logan v. U.S. Dept. of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014)....................11

*Westar Energy Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009).............................................12

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)................................................11
## Statutes
Utah Code Ann. § 13-8-1 ...............................................................................................................17

Utah Code Ann. § 31A-27a-610(2)(b) ...........................................................................................17

Utah Code Ann. § 78B-5-817, et seq..............................................................................................17

**Rules**

DUCivR 7-1.................................................................................................................................1

Fed. R. Civ. P. 65.......................................................................................................................1

**Treatises**

11A C. Wright *et al*., Federal Practice and Procedure § 2948.1 (2006).......................................20

1lA C. Wright *et al*. Federal Practice & Procedure § 2946 ...........................................................21

## I.   **INTRODUCTION**

Enough is enough. Zurich has already exercised one draconian remedy, namely its "takeover rights" for all of the accounts of Ascent Construction, which at the time of takeover in February 2020 had more than *$130 million* in contracts for new work scheduled for the first 6 months of 2020 and was on track to put a total of *$270-$300 million* under contract for all of 2020. Zurich claims that it advanced $8.7 million toward settling Ascent's debts, and now "fears" (using the Latin phrase, *quia timit*) that it may need to settle $58 million more of (undocumented) claims on Ascent's projects and that Zurich is now finishing, thus greatly exaggerating the need for funds in addition to the projects taken over. Yet, Zurich already took over approximately $130 million of Ascent's projects—ordinarily more than enough to alleviate any reasonable *timit* (*i.e.*, fears).

But that was not enough. Zurich now demands a second draconian remedy: a mandatory TRO and preliminary injunction that would require clear, status-quo-altering, affirmative acts from both Ascent and Brad—namely, specific performance to deposit an *additional* $10 million of "certified funds" into Zurich's accounts. Even these two draconian remedies are not enough for Zurich. It has also availed itself, already, of a third remedy—filing Lis Pendens notices on numerous buildings and private residences collectively valued at close to $4.3 million. (*See*, Dkt. Nos. 14, 15, 16, 25, and 26.)

Zurich is already sufficiently collateralized. In fact, it is over-collateralized and has no credible need for more. Nor does Zurich have a need for a TRO or preliminary injunction as it has not, and will not, suffer any irreparable harm. Zurich already has all of Ascent's $130 million in accounts and projects, plus it has filed Lis Pendens notices (which are the functional equivalent of

liens) on nearly $4.3 million in private residences and other property. No evidence provided demonstrates the need for more.

Enough is enough. Zurich fails to satisfy every one of the elements required for injunctive relief. This Court should deny the Motion.

## II.     STATEMENT OF FACTS

1.     Zurich has not attached even a single bond (either performance or payment bond) to its Motion or Complaint. (*See*, Complaint and Zurich's Motion for TRO, *passim*.)

2.     Zurich has not provided the dates for even one of its bonds. (*Id*.)

3.     Zurich has not provided evidence for its claim of $58 million in bond claims. (*Id*., esp. Zurich's Motion at Facts ¶ 24.)

4.     The 2001 GIA has been released by Zurich as to the individual indemnitors and is of no further force or effect as to them. (*See* Zurich's Motion, at 14 n.5.)

5.     The two General Indemnity Agreements (GIAs) executed in 2017 are narrowly limited: Paragraph 29 of the "2017 Sugarmont GIA" (as Zurich refers to it in its motion) expressly limits the liability of individual indemnitors under the GIA only to the Sugarmont Project, "notwithstanding" any language elsewhere. (CM/ECF no. 2, exhibit 2-3 ¶ 29, erroneously labeled as Exhibit 2.)

6.     The second GIA executed in 2017, which Zurich's motion refers to as the "2017 Gardner Mill GIA" likewise expressly limits the liability of individual indemnitors to the Gardner Mill project with substantially similar language. (CM/ECF no. 2, exhibit 2-4, erroneously labeled as Exhibits 3).

7.      The 2019 GIA, as the pages are currently assembled, purports to be unlimited, but Zurich admits that Brad Knowlton made a hand-written emendation to the 2019 GIA, limiting it to the Bountiful Courts project, and the signature page from the version emended by Brad has been erroneously assembled with the version preferred by Zurich, but not agreed to by Brad. (*Compare* CM/ECF No. 2-5, erroneously labeled as Exhibit 4, *with* Zurich's Motion at 20 n.8.)

8.      In any event, the 2019 GIA was executed only a year ago, in July 2019, after all other bonds issued by Zurich except for the Bountiful Courts (i.e., Bountiful Municipal Building) project, so it cannot apply to any project other than the Bountiful Courts project. (*Id*.)

9.      Thus, the 2019 GIA is consistent with Brad's handwritten emendation limiting his agreement to the Bountiful Courts project, because no other projects have been bonded by Zurich since the 2019 GIA was signed, and the two prior GIAs are limited to specific projects. (*Id*.)

10.      Thus, the three GIAs produced in this case apply to only three projects: Sugarmont, Gardner Mill, and Bountiful Courts. (*See* ¶¶ 5-8, *supra*.)

11.      The combined total face amounts of the bonds for the three projects (before work on the projects began to be performed) appears to be $108,239,044 (though Zurich has failed to produce the bonds, Ascent will assume the claimed amounts for the sake of this motion, without conclusively admitting them), calculated as follows:

| Project | Bond Amount |
|---------|-------------|
| Sugarmont | $62,750,000 |
| Gardner Mill (Station at Gardner Mill) | $38,242,184 |
| Bountiful Courts (City Hall Remodel) | $7,184,110 |
| TOTAL | $108,239,044 |

12.     The foregoing face amounts of the bonds do not take into account the fact that a great deal of work on all of these projects has been performed, thus reducing exposure.

13.     Brad L. Knowlton, the President of Ascent, has compiled a chart of the funds from Ascent's projects, currently taken over by Zurich, that are available to be collected:

| Project | Available Funds to Collect | Surety's Alleged Payments[1] | Delta (excess funds) |
|---|---|---|---|
| Sugarmont | $2,107,578 +$11,348,118 | $0.00 (surety denied claim) | $13,044,882 |
| Bountiful City Municipal Bldg. | $1,502,221 | $1,470,716 | $31,505 |
| So. Jordan Public Works | $7,703,553 | $2,099,543 | $5,604,010 plus retention |
| APA Auditorium | $9,394,320 | $315,042 | $9,079,028 |
| WVC Classroom | $808,481 | $433,085 | $375,396 |
| Davis County W. Bountfl Elem'y | $5,956,187 | $4,356,018 | $1,600,169 |
| Elko Parkchester School | $250,000 | $645,956 | (395,956) |
| Station at Gardner Mill | $17,179,980 plus intst $1,509,247 | $0.00 (surety denied claim) | $17,179,980 + $1,509,247 |
| Sandy City Municipal Building | | $0.00 No exposure No consequences | $0.00 |
| | | | |
| | $57,759,684 | $9,320,360 | $48,439,325 |
| | | | |
| | | Available funds for Zurich | $16,294,402 |
| | | Excess to return to Ascent | $32,144,923 |

Exhibit 1, Declaration of Brad Knowlton, ¶ 13.

14.     According to the foregoing chart, funds available to collect from current Ascent projects equals **$57,759,684**. *Id*.

15.     According to the same chart, Zurich has so far claimed that it has paid $9,320,360 in bond claims related to the projects in the chart. *Id*.

---

[1] As alleged by Zurich in its Motion for TRO.

16.     Accordingly, there is still an excess above paid claims of $48,439,325 available to be collected from Ascent's projects. *Id*.

17.     Given the excess available, and Zurich's demand for an additional $10 million, the chart indicates that an amount of $16,294,402 is available for Zurich out of Ascent's assets. *Id*.

18.     Also, there is an additional $32,144,923 in excess funds available from Ascent's current projects that could be returned to Ascent so that it can continue operations. *Id*.

19.     These numbers are consistent with the actual work Ascent had under contract; each bond issued by Zurich was for a project under contract, that would have funds available.

20.     Zurich's Motion claims, without the benefit of supporting documentation, that Zurich has already settled many of the claims on its bonds, but it does not specify the total amount of claims settled to date. *See* Zurich's Motion, at ¶¶ 24(b) – 24(h).

21.     Zurich's motion does not provide supporting documentation to demonstrate any clear amount of remaining unpaid, unresolved claims relating to the Sugarmont, Gardner Mill, and Bountiful Court projects. *See* Zurich's Motion, *passim*.

22.     Zurich's Motion lists 18 additional bonds issued (without attaching them), for projects that are not covered by the GIAs. *See* Zurich's Motion, at Facts ¶ 7.

23.     Zurich has not attached any evidence to its motion to support the actual amount of the claims made on Zurich's bonds for the Sugarmont, Gardner Mill, and Bountiful Courts projects. *See*, Zurich's Motion, *passim*.

24.     The personal financial statements referenced in Zurich's Motion are not sworn or notarized. *See* CM/ECF No. 18, Exhibit Nos. 18-1, 18-2, 18-3.

25.     Zurich exercised its takeover rights to take over all of Ascent's accounts in approximately February of 2020. *See* Ex. 1, Decl. of B. Knowlton, ¶ 6.

26.     At the time of takeover, Ascent had over $130 million in contracts for "New Work" for the first 6 months of 2020. *See* Ex. 1, Decl. of B. Knowlton, ¶ 9.

27.     Brad's Declaration states that Ascent anticipated contracts of $270-$300 million by the end of the 2020 calendar year. *See* Ex. 1, Decl. of B. Knowlton, ¶ 11.

28.     Zurich has provided no adequate accounting for the collateral (namely, Ascent's accounts) that it has already taken over. *See* Ex. 1, Decl. of B. Knowlton, ¶¶ 16-19.

29.     Zurich has provided no accounting for the allocation of Ascent's collateral to specific projects and specific bond claims. *Id*.

30.     Zurich's motion has attached no supporting evidence that the amount of additional bond claims will exceed the amount of collateral it already possesses in the form of Ascent's accounts that it has already taken over. *See* Zurich's Motion, *passim*.

31.     Zurich has provided no calculation, formula, or other rationale for the amount of $10 million as the amount of funds it needs; it appears to be an arbitrary number. *Id*.

III.     **PRELIMINARY INJUNCTION STANDARD**

It is well settled that "[a] preliminary injunction is an extraordinary remedy; it is the exception rather than the rule." *Arnett v. Howard*, No. 2:13-CV-591, 2014 U.S. Dist. LEXIS 38633, at *19 (D. Utah Mar. 21, 2014) (quoting *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984)); see also, *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) ("[A] preliminary injunction … is the exception rather than the rule"). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and

unequivocal." *Id.* (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001)); see also, *Mazurka v. Armstrong*, 520 U.S. 968, 972 (1997) (per curium) (*Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) ("As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.") (quotations and citation omitted)).

Put differently, a preliminary injunction is justified only upon a "clear and unequivocal showing" that all four prerequisites are satisfied. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260-61 (10th Cir. 2004). Such extraordinary relief is "never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Moreover, because a preliminary injunction carries with it "the potential for considerable harm … the issuance of such an injunction, like the power of contempt, is one which is at best used sparingly, if at all." *Religious Tech. Ctr. v. F.A.C.T.NET, Inc.*, 901 F. Supp. 1519, 1523 (D. Colo. 1995).

In the rare and limited circumstance such is applicable, "[a] plaintiff seeking a preliminary injunction must establish [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in [its] favor, and [4] that the injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); see also, *Village of Logan v. U.S. Dept. of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014). This analysis includes whether granting the preliminary injunction will cause "harm to others." *Valdez v. Applegate*, 616 F.2d 570 (10th Cir. 1980); *see also Kentucky v. U.S. ex. rel. Hagel*, 759 F.3d 588 (6th Cir. 2014).

Notably, federal courts routinely hold that "the limited purpose of the preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can

be held ….'" *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *Univ. of Tex. V. Camenisch*, 451 U.S. 390, 395 (1981)). To that end, the Tenth Circuit identifies the following as inherently disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions (*e.g.*, injunctions that compel, rather than prohibit, activity on the part of the enjoined party); and (3) preliminary injunctions that afford the movant all the relief it could recover at the conclusion of a full trial on the merits." *Schrier*, 427 F.3d at 1258; *accord Westar Energy Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009).

## IV.   ARGUMENTS AND AUTHORITIES

### A.  Heightened Scrutiny Applies to This Disfavored Motion.

   *1.   The Motion is disfavored as the relief sought will change the status quo.*

Zurich's Motion is disfavored under controlling law as it seeks to fundamentally change the status quo. A preliminary injunction serves "to preserve the status quo pending the outcome of the case." *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986). The Tenth Circuit explains that "courts should be hesitant to grant the extraordinary interim relief of a preliminary injunction in any particular case, but especially so when such an injunction would alter the status quo prior to a trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), aff'd sub nom, *Gonzalez v. O Centro Espirita Beneficiente Uniao Do Vegetal*, 546 U.S. 418, 439 (2006).

Any request for injunctive relief that seeks to alter the status quo, therefore, "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id*. at 975; *accord Schrier*, 427 F .3d at 1258-59. The "status quo" under the foregoing standard is "the last uncontested status between the parties which

preceded the controversy until the outcome of the final hearing." *Schrier*, 427 F.3d at 1260 (quotations and citation omitted). "In determining the status quo for preliminary injunctions, [the Tenth Circuit] looks to the reality of the existing status and relationship between the parties and not solely the parties' legal rights." *Id.* (quotations and citation omitted).

Here, Zurich's Motion plainly seeks to alter the status quo. Specifically, the Motion requests: (1) Defendants to provide full and unfettered access to their books and records, including providing updated personal financial statement; (2) Defendants, jointly and severally, to place Zurich in certified funds in the amount of no less than $10,000,000; (3) an extremely far-reaching lien against certain real and personal property of Defendants in the amount of no less than $10,000,000 in favor of Zurich; and (4) Defendants be prevented from transferring, encumbering, or disposing of any assets, which includes Defendants' respective interests in 15 limited liability companies and/or corporations, until Zurich is placed in funds of $10,000,000. *See id.*

Zurich requests this Court to enjoin Defendants to perform each of the above actions, but not "to preserve the status quo pending the outcome of the case." *Tri-State Generation*, 805 F.2d at 355. Indeed, Zurich effectively wants to obtain a full judgment against Defendants under the guise of preliminary relief. This cannot stand. The Court, therefore, must even more closely scrutinize Zurich's request for a preliminary injunction.

2. *The Motion is disfavored as the relief sought requires affirmative acts and, therefore, is a mandatory injunction.*

A mandatory injunction, such as the one requested by Zurich, imposes an even heavier burden upon the movant to show that the four factors weigh compellingly in the movant's favor. *See, e.g.*, *Schrier*, 427 F.3d at 1259-60; *U.S. v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999). That is because a mandatory injunction counters the purpose of interim relief, which is to

preserve the parties' relative positions until trial on the merits. *See University of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Here, Zurich argues that it does not seek a mandatory injunction. This is verifiably false. Zurich seeks specific performance—namely, specific performance in the nature of depositing $10 million in its account, as well as placing liens on properties, freezing assets, and compelling the creation of new updated personal financial statements from Brad. These are the exact affirmative acts the controlling case law on injunctions disfavors. Further, although Zurich asks for "access" to financial records, the access it seeks is the creation of Personal Financial Statements similar to the ones it already has. Such activity is disfavored.

In addition, Zurich takes the position that the subject agreements require such actions in the event of breach or anticipated breach as collateral security against future anticipated losses. It is disingenuous, then, for Zurich to also take the position that seeking mandatory relief is to simply preserve the status quo, considering the status quo sits prior to the alleged breaches. Again, Zurich wants this preliminary injunction to act as a dispositive motion or trial on the merits under the guise of maintaining the status quo of the parties.

Finally, the United States Supreme Court describes the prejudgment asset-freeze injunction that Zurich seeks as "the nuclear weapon of the law." *Grupo Mexicano de Desarrollo SA v. Alliance Bond Fund Inc.*, 527 U.S. 308, 329 (1999). Before a party may seek an asset freeze, as Zurich requests of the Court here, it must show that there is a likelihood those assets are being dissipated or that Zurich will have an inability to recover monetary damages if the injunctive relief is not granted. *See Conn. Gen. Life Ins. Co. v. New Images*, 321 F. 3d 878, 881 (9th Cir. 2003). Zurich has failed to show such a likelihood.

*3. The Motion is disfavored as the preliminary injunction, if granted, will afford Zurich substantially all the relief it might be entitled to after a full trial on the merits.*

The Tenth Circuit explains "the only reason to disfavor a preliminary injunction that grants substantially all the relief sought is if it would render a trial on the merits largely or completely meaningless." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). Such is the case here. If Zurich's Motion is granted, the preliminary injunction will grant substantially all the relief Zurich seeks in this lawsuit and render a trial on the merits largely or completely meaningless. To be sure, this Court need not look any further than the relief sought in Zurich's Complaint and Motion. It is, in effect, the exact same. *Compare* Zurich's Complaint, pgs. 22-23 *with* Zurich's Motion, pgs. 43-44.

Specifically, in both the Complaint and Motion Zurich requests: (1) Defendants to provide full and unfettered access to their books and records, including providing updated personal financial statement; (2) Defendants, jointly and severally, to place Zurich in certified funds in the amount of no less than $10,000,000; (3) an extremely far-reaching lien against certain real and personal property of Defendants in the amount of no less than $10,000,000 in favor of Zurich; and (4) Defendants be prevented from transferring, encumbering, or disposing of any assets, which includes Defendants' respective interests in 15 limited liability companies and/or corporations, until Zurich is placed in funds in the amount of no less than $10,000,000. *See id*. If the preliminary injunction is granted, then a trial on the merits will be moot. This is expressly prohibited under controlling law.

Therefore, because Zurich's preliminary injunction will "grant[] substantially all the relief sought [by Zurich and] would render a trial on the merits largely or completely meaningless[,]" this Court should deny the Motion in its entirety. *See Dominion Video*, 269 F.3d at 1156.

## B. Injunctive Relief Is Not Available Against the Individual Indemnitors.

TRO and preliminary injunctive relief should not be granted against the individual guarantors. "Indemnity contracts are subject to the same rules of construction as other contracts; thus we read the contract as a whole and harmonize and give effect to all provisions." *Free Mot. Fitness, Inc. v. Wells Fargo Bank W., NA*, 2009 UT App 120, ¶ 18, 208 P.3d 1066. When construing indemnity agreements, Utah courts look to the parties' objectives and the surrounding facts and circumstances to interpret contractual language. *Ervin v. Lowe's Companies, Inc.*, 2005 UT App 463, ¶ 10, 128 P.3d 11.

Any ambiguities are construed against the surety. *American Bonding Company v. Nelson*, 763 P.2d 814, 816 (Utah App. 1988), *cf. Fire Ins. Exchange v. Oltmanns*, 2012 UT App 230, ¶¶ 6-7, 285 P.3d 802. Although Zurich claims that sureties are "favorites" of the law, that principle only applies to unpaid sureties. If a surety makes insurance a business for compensation, the contract is construed against him and in favor of the insured. *M.H. Walker Realty Co. v. Am. Surety Co. of New York*, 211 P. 998 (Utah 1922). Indeed, the terms of a surety contract are to be construed against a compensated surety. *Utah State Bldg. Bd. v. Walsh Plumbing Co.*, 399 P.2d 141, 143 (Utah 1965); *American Bonding Co. v. Nelson*, 763 P.2d 814, 816 (Utah Ct. App. 1988).

In *American Bonding Company*, an indemnity agreement with two indemnitors was considered ambiguous. Because the agreement was ambiguous, the court held that the contract had to be strictly construed against the surety. *American Bonding Company*, 763 P.2d at 816. Likewise, in the case at bar, there is ambiguity relating to the 2019 GIA as to whether Brad would indemnify anything other than the Bountiful Courts project, as well as which GIAs apply to which projects. These ambiguities should be construed against the surety.

Moreover, Utah statute requires that if collateral is pledged by the principal, the surety is required to seek reimbursement from the collateral first. *See* Utah Code Ann. § 31A-27a-610(2)(b). In this case, the collateral has already been pledged by Ascent. There is roughly $57 million of excess collateral already in Zurich's hands. Under Utah statute law, the surety must look first to that collateral, which is more than ample to satisfy Zurich's concerns. There is no need to look to the indemnitors.

Finally, the indemnity agreements violate Utah's strong public policy stated in the Utah Liability Reform Act, which renders the GIAs as unenforceable. Utah's Liability Reform Act, Utah Code Ann. § 78B-5-817, et seq., ensures that parties are only accountable for their own fault. Utah Code Ann. § 13-8-1 renders indemnity provisions in construction contracts unenforceable if they require the indemnitor to indemnify the indemnitee for the fault of "promise, indemnitee, others, or their agents or employees." The Utah Court of Appeals has struck down an indemnification provision in its entirety on public policy grounds when part of the provision exceeded the scope of Utah Code Ann. § 13-8-1. *Jacobsen Const. Co. v. Blaine Const. Co., Inc.*, 863 P.2d 1329, 1331 (Utah Ct. App. 1993). The GIAs require each indemnitor to cover all fault, and are thus void.

Accordingly, the indemnity provisions against the individual indemnitors should not be enforced, particularly not at this preliminary stage of a temporary restraining order.

**C. Zurich Failed to Prove That It Will Suffer Immediate and Irreparable Harm In The Absence of Preliminary Injunctive Relief.**

Zurich claims that it will suffer irreparable harm if the requested preliminary injunction is not granted. As discussed more fully below, Zurich has not provided any credible evidence of such harm and has made no such showing to this Court. Therefore, there is no irreparable harm present in this case and the Motion should be denied.

*1. The irreparable harm standard for preliminary injunctions.*

It is well-settled that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Cincinnati Ins. Co. v. Rocky Mtn. Water Works, LLC*, Civil Action No. 20-cv-00146-CMA-KLM, 2020 WL 978744, at *2 (D. Colo. Feb. 28, 2020) (slip copy) (quotation marks omitted) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). "[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id*. (quotation marks and citation omitted).

Thus, "if the movant fails to meet its burden of establishing irreparable injury, courts need not address the remaining preliminary injunction factors." (quotation marks and citation omitted). "Irreparable harm" justifying an injunction is harm that cannot be adequately compensated by money damages. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) ("It is also well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by money damages.").

"The concept of irreparable harm, unfortunately, does not readily lend itself to definition." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (quotation simplified). Nor is it "an easy burden to fulfill." *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1262 (10th Cir. 2003). In *Li v. Lewis*, this Court explained:

> Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.
>
> ...
>
> Irreparable harm means an injury that must be both certain and great, and

that it must not be merely serious or substantial. Issuing a preliminary injunction based only on the possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy. It may only be awarded upon a clear showing that the plaintiff is entitled to such relief. Thus, the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. This typically involves the type of injury that cannot be atoned for in money or when a remedy cannot be fashioned following a determination on the merits. Simple economic loss usually does not, in and of itself, constitute irreparable harm. Such losses are compensable by monetary damages.

Case No. 1:20-CV-12 TS-PMW, 2020 WL 3218788, at *2 (D. Utah June 15, 2020) (quotation simplified).

In *Husky Ventures, Inc. v. B55 Investments, Ltd.*, the Tenth Circuit provides further guidance on the issue of irreparable harm. That case echoes the standards articulated in the legal authorities previously cited:

Proving irreparable harm—the only contested element here—is not "an easy burden to fulfill." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). We do not deem harm "irreparable" unless a petitioner can show "a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." . . . "Purely speculative harm will not suffice, but '[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative and will be held to have satisfied this burden.'" *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011)[.]

911 F.3d 1000, 1101 (10th Cir. 2018); *see also Prairie Band*, 253 F.3d at 1250 (quotation simplified) ("the injury must be both certain and great, and … must not be merely serious or substantial."); *Schrier v. University of Colorado*, 427 F.3d 1253, 1267 (10th Cir. 2005) (explaining that for an injury to constitute irreparable harm, it must be "certain, great, actual and not theoretical.").

As the following will demonstrate, Zurich failed to meet its burden of showing irreparable harm under the foregoing standard.

2. *Zurich's significant delay in seeking preliminary relief negates or, at the very least, severely undercuts any purported immediate or irreparable harm.*

Zurich's stark delay in seeking its preliminary injunction further precludes its request. Delay in seeking a preliminary injunction severely undermines any claim that the moving party faces irreparable harm. *See* 11A C. Wright *et al*., Federal Practice and Procedure § 2948.1 (2006) ("A long delay by plaintiff after learning of the threatened harm may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.") "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights[, but d]elay in seeking enforcement of those rights … tends to indicate at least reduced need for such drastic, speedy action." *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F.Supp.2d 1201, 1221 (D. Utah 2004) (quoting *Citibank, N.A., v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)).

In the Tenth Circuit, appellate and district courts hold that a delay in seeking preliminary relief undercuts a party's assertion of irreparable harm. *See GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) ("Delay in seeking relief, however, undercuts any presumption that infringement alone has caused irreparable harm pendente lite; therefore, such delay may justify denial of a preliminary injunction[.]"); *Nature's Life, Inc. v. Renew Life Formulas, Inc.*, No. 2:05 CV 162, 2006 WL 62829, at *5 (D. Utah Jan. 11, 2006) (finding that a nine-month delay "severely undercuts [movant's] claim that it is suffering immediate and irreparable harm as a result of [non-movant's] updated logo" and denying motion for preliminary injunction); *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F.Supp.2d 1201, 1221 (D. Utah 2004) (finding that five-month delay

"belie[d] any irreparable injury to [plaintiffs'] rights" and citing 1lA C. Wright *et al*. Federal Practice & Procedure § 2946 and *Citibank, N.A.*, 756 F.2d at 276 in support of finding delay as inconsistent with irreparable harm); *see also Kan. Health Care Assoc., Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1544 (10th Cir. 1994) (holding that "[a]s a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury").

Other federal courts routinely hold that delay alone "can be fatal to a motion for preliminary injunction." *Bristol Tech. Inc. v. Microsoft Corp.*, 42 F.Supp.2d 153, 162 (D. Conn. 1998); *see also Citibank*, 756 F.2d at 277 (2d Cir. 1985) (ten-week delay in seeking preliminary injunction indicated an absence of irreparable harm); *Rexnord, Inc. v. Laitram Corp.*, 628 F.Supp. 467, 474 (E.D. Wis. 1986) (failure to promptly move for an injunction is fatal to contention of irreparable harm); *Allen Organ Co. v. CBS, Inc.*, No. 84 Civ. 3856 (SWK), 1986 WL 4901, at *2 (S.D.N.Y. Apr. 21, 1986) ("Allen's eight month delay in seeking relief is thus fatal to its request for a preliminary injunction, and the motion is denied.").

Further, "[a] delay in seeking a preliminary injunction indicates that the damages [plaintiff] contemplates are not serious enough to justify a preliminary injunction." *Mid-States Ag-Chem Co. v. Atchison Grain Co.*, 750 F.Supp. 465, 467 (D. Kan. 1990) (quotation marks and citation omitted); *Kingsford Prods. Co. v. Kingsford, Inc.*, 674 F.Supp. 1428, 1431 (D. Kan. 1987) (delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief").

By its own pleadings, Zurich knew of the existence of the bond claims and purported liability by spring of 2019—over a year and a half ago—when Zurich "began receiving correspondence from project owners regarding disputes with Ascent" or, in the alternative, in summer 2019—over a year ago—when "several payment bond claims" and a performance bond

claim were made. *See* Motion, pg. 9. Zurich's extensive delay of at least one year, but arguably much longer, in seeking preliminary relief severely undercuts its assertion of irreparable harm and further indicates that the damages it contemplates are not serious enough to justify a preliminary injunction. *See GTE Corp.*, 731 F.2d at 678; *Mid-States*, 750 F.Supp. at 467.

Simply put, the sense of urgency that ordinarily accompanies a motion for preliminary relief is not present here. By any measure, Zurich's request for preliminary relief should be rejected and denied as untimely.

3. *The central relief Zurich seeks—deposit of $10 million—is classic monetary relief, which means Zurich will not and has not suffered irreparable harm.*

"[I]n an action for money damages, the district court does not have the power to issue a preliminary injunction …." *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 495-96 (4th Cir. 1999) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 324-25 (1999)); see also *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418-20 (8th Cir. 1987) (finding that a preliminary injunction is inappropriate where a remedy for money damages is available). The central relief Zurich seeks, namely "to be placed in funds," is classic monetary relief rather than irreparable harm. In reality, Zurich seeks nothing more than money, and the definite sum of $10 million at that. This case is a quintessential example of what is not irreparable harm. An adequate remedy at law exists which precludes granting the requested injunctive relief. Zurich has made no showing to the contrary.

4. *The injunction clauses in the GIAs relating to irreparable harm are not enforceable.*

Despite Zurich's argument to the contrary, the injunction provisions in the GIAs attempting to unilaterally establish irreparable harm upon actual or anticipated breach are not enforceable. First, the contracting parties have no right or authority to decide whether to grant injunctive relief.

That decision lies squarely within the district court's discretion. *See RoDa Drilling Co. v. Siegal*, 552 F. 3d 1203, 1208 (10th Cir. 2009) (preliminary injunctive relief is a matter dedicated to the district court's sound discretion).

Second, district courts examining injunction clauses hold that such cannot guarantee an automatic injunction. *See e.g., First Health Group Corp v. Nat'l Prescription Adm'rs, Inc*., 155 F.Supp.2d 194 (M.D. Pa. 2001). This is because, at the time the contract is signed, the parties lack foreknowledge of the nature or consequences of a particular breach. Even if the anticipated consequences occur, the parties might simply be wrong in characterizing the harm as "irreparable".

For example, in *First Health*, an employer sought to enforce an employment agreement, which contained an injunction clause, against its former employee. 155 F.Supp.2d at 198-215. The presence of the injunction clause did not prevent the court from engaging in the required analysis of whether the employer, as movant, would suffer irreparable harm without a preliminary injunction. *See id.*, at 234-35. The court disregarded the injunction clause and stated, "[the movant] cite[d] no authority, and this [c]ourt has found none, in support of the proposition that the parties may contractually bind themselves and the Court to injunctive relief before any breach has occurred." *Id.*, at 234. "Because the nature of the alleged breach and its consequences are unknown when a contract is executed, a question exists as to whether the parties can effectively waive a judicial determination on this crucial element." *First Health*, 155 F.Supp.2d at 235. The court ultimately denied injunctive relief because the threatened harm was both speculative and compensable by monetary damages. *Id.*, at 238.

Third, federal courts reject the notion that a contract clause, by itself, provides sufficient evidence to support preliminary injunctive relief. In *Dominion Video Satellite, Inc. v. Echostar*

*Satellite Corp.*, the Tenth Circuit reversed a preliminary injunction enforcing the plaintiff's exclusive rights under a contract between the parties. 356 F.3d 1256 (10th Cir. 2004). The district court issued the injunction based on the contract provision that granted the exclusive rights. *Id.* at 1261-62. The Court explained: "Were we to affirm the district court's finding on irreparable harm, we would in essence be ruling that whenever a party enters into a contract containing some form of exclusivity provision, injunctive relief is automatic upon breach of the clause even when the breaching party has refuted every assertion of specific irreparable harm put forth by the opposing party. We are not willing to go that far." *Id.* at 1265.

Here, the contracting parties have no right or authority to decide whether to grant injunctive relief as such a decision lies squarely within this Court's discretion. In addition, the injunction clauses in the various GIAs that Zurich relies on in seeking injunctive relief are unenforceable as such cannot guarantee an automatic injunction. *See First Health*, 155 F.Supp.2d at 194. Finally, the injunction clauses, in and of themselves, do not provide sufficient evidence to support Zurich's request for preliminary injunctive relief. *See Dominion Video*, 356 F.3d at 1256. In short, contract language cannot create a right to injunctive relief when an injunction is otherwise inappropriate.

Because the injunction clauses in the GIAs relating to irreparable harm are not enforceable, the Court should deny Zurich's Motion and request for injunctive relief.

5. *Zurich's position that Brad's purported failure to provide collateral security causes irreparable harm and that money damages are incapable of alleviating injury if Ascent and Brad are not forced to place Zurich in funds is untenable.*

Zurich argues that the Brad's failure to provide collateral is or will cause irreparable harm to the surety and that money damages are incapable of alleviating the injury Zurich will supposedly suffer if an injunction is not entered enforcing its right to be placed in funds. *See* Motion, pgs. 37-

42. Even so, federal district courts in the Tenth Circuit hold that this exact type of harm Zurich alleges "is purely economic, and numerous [other] courts have persuasively rejected the theories upon which [Zurich] relies." *Cincinnati Ins. Co. v. Rocky Mtn. Water Works, LLC*, Civil Action No. 20-cv-00146-CMA-KLM, 2020 WL 978744, at *2 (D. Colo. Feb. 28, 2020 (slip copy).

In the context of surety contracts that include collateral security clauses, just as the contracts at issue here, courts hold:

> The purpose of a collateral security clause is to provide sureties with access to financial cushioning during the pendency of claims and, where violated, the surety suffers ongoing harm in the form of missing money, but, whatever the loss, whether to financial security or otherwise, it is monetary in character, and may be adequately remedied by a judgment on the merits.

*Allied World Specialty Ins. Co. v. Abat Lerew Constr., LLC*, No. 8:16CV545, 2017 WL 1476131, at *4 (D. Neb. Apr. 24, 2017); *see also*, *Ohio Cas. Ins. Co. v. Campbell's Siding & Windows*, No. 1:15-CV-00255-EJL, 2015WL 6758137, at *3 (D. Idaho Nov. 4, 2015) (denying surety's motion for preliminary injunction because surety "only seeks injunctive relief to require the payment of collateral security which is an economic injury and not irreparable."); *Travelers Cas. & Sur. Co. of Am. v. W.P. Rowland Constructors Corp.*, No. CV 12-00390-PHX-FJM, 2012 WL 1718630, at *3 (D. Ariz. May 15, 2012) (denying surety's motion for preliminary injunction because surety "has not shown that it is likely to incur any damages other than the economic cost of paying the bond claims prior to receiving collateral.").

Here, Zurich only seeks injunctive relief to require the payment of collateral security. As already decided by various federal courts, including courts in this Circuit, this constitutes an economic injury and is not irreparable. Zurich has not shown that it is likely to incur any damages other than the economic cost of paying the bond claims prior to receiving collateral. The relief

Zurich seeks is, at its core, monetary in character, and may be adequately remedied by a judgment on the merits. The Motion should be denied.

6.  Quia Timet *and Delayed Exoneration Are Not Irreparable Harm.*

In order to establish irreparable harm warranting injunctive relief, a surety must show that it cannot be made whole following the resolution of the case on the merits. *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 32 (2d. Cir. 1991) Under *Borey*, the loss of *quia timet* rights and delayed exoneration are not irreparable harm. The *Borey* court held:

> Even if the surety would "forever" lose these rights—an assumption in which we do not join—we have held that irreparable harm does not necessarily follow. In *Abish v. Northwestern Nat'l Insurance Co.*, 924 F.2d 448 (2d Cir. 1991), . . . we held that the loss of a surety's rights to *quia timet* and exoneration does not "cause serious or irreparable consequences." *Id.* at 453. We stated that "[i]n determining whether irreparable harm exists, the critical inquiry is not whether the surety's rights are lost, but whether the loss of those rights will cause serious or irreparable harm." *Id*. We held, in *Abish*, that because the surety's claims for *quia timet* and exoneration relief contemplated a monetary award, the surety would have to establish more to persuade us that it could not "be made whole upon resolution of the merits."

934 F.2d 30, 34 (2d Cir. 1991). *See also, Cincinnati Insurance Company v. Rocky Mountain Water Works, LLC*, 2020 WL 978744 (February 28, 2020, D. Colo.) (Comparable arguments made by Zurich's counsel, Connor Cantrell, in a similar request for TRO.)

Accordingly, Zurich's claims for *quia timet* relief at this stage should be denied.

7.  *Zurich already has enough collateral from Ascent and, therefore, will not suffer immediate or irreparable harm.*

There is no harm to Zurich, let alone irreparable harm, because it already has enough collateral to cover the bond claims that may, or may not, arise. The total value of the bonds, as written before commencement of the projects, is approximately $200 million. However, the GIAs do not apply to all of the bonds; only to roughly $108 million for the bonds issued on the

Sugarmont, Gardner Mill, and Bountiful Courts projects. It is undisputed that significant work on each project has been completed and paid for by Ascent. Thus, the total exposure on each of these projects is greatly reduced. Zurich's Motion avers that its current bond claims are approximately $58 million. As Brad's Declaration demonstrates, Ascent itself has available receivables of more than $57 million to cover such risks. There is no need for more.

Given the fact that, according to Zurich, it has only paid out some $9.3 million in claims thus far, there is little to no reasonable risk that there is a need for the entire $57 million. A more reasonable view would be to allow Zurich to retain approximately $16 million of Ascent's assets (its receivables from the projects), while allowing approximately $32 million of the excess to be returned to Ascent so that it may continue operations.

In other words, Zurich is already adequately collateralized by Ascent's works in progress and related accounts receivable. There is no need for further collateral, and particularly no need to demand $10 million in certified funds or to lien additional properties.

**D. Zurich Has Failed to Prove It Will Likely Prevail on the Merits.**

Zurich does not need $10 million in additional cash or security. It has not provided any credible evidence (and should be barred from attempting to do so in its reply) that the immediate claims on its bonded projects come close to $10 million. In this regard, Zurich's Motion is a seriously, if not fatally, deficient because it fails to attach any bonds to determine what is and is not covered under such, nor what the scope of the bonded projects would be. Similarly, Zurich has failed to provide any evidence by affidavit or document showing the amounts it has paid out on bonded Ascent projects, nor even substantiating what the real claims against its bonds are. Zurich merely asserts that it needs $10 million without evidentiary support.

An even more glaring omission is Zurich's failure to submit any evidence as to the aggregate value of Ascent's accounts that it took over. It has moved straight to a demand on the individual guarantors without providing any information that their guarantee is even necessary. Zurich focuses on contract language stating that the guarantors are "jointly and severally liable" with Ascent for Ascent's debts, but that cuts both ways: if Ascent has already provided adequate cash and collateral, then there is no need for the guarantors to provide more. In essence, Zurich is attempting to double-dip by demanding that the individual guarantors supply what Ascent has already provided to a much greater degree.

A surety's right to such remedies as indemnification, exoneration, or specific performance is also subject to the surety acting in good faith. This is particularly true in the context of seeking an equitable remedy such as injunctive relief. In this case, Zurich has not acted with the requisite good faith because it has encouraged subcontractors to submit bond claims and has engaged in a conflict of interest by soliciting an insider of Ascent—Dallas Knowlton (Ascent's recent Vice President)—to set up a separate competing company to finish Ascent's work.

The 2001 GIA has been released as to all individual indemnitors, as Zurich itself admits: "The Individual Indemnitors also executed the 2001 GIA but were subsequently released in 2010." Zurich's Motion, at 14, n.5. After Zurich released the individual indemnitors in 2010, the two 2017 GIA documents had specific language in paragraph 29 of each, stating that notwithstanding any language in the GIA to the contrary, the individuals' obligations were limited to the Sugarmont project and the Gardner Mill project, respectively. *See* Zurich's Complaint, Exhibits 2, and 3.

Likewise, Brad's 2019 GIA was limited to the Bountiful Courts project. Zurich admits that Brad hand-wrote that the GIA applied only to the Bountiful Courts project, but it has simply

attached his signature page to another document more to its liking. The fact that the signature page of the GIA is separate from the rest of the agreement, and each page is not initialed, means either that the actual agreement was limited only to the Bountiful Courts project, or that there was no meeting of the minds (or at least an ambiguity) as to what Brad was willing to indemnify. Either way, the 2019 GIA cannot be construed as a blanket indemnification of all projects, particularly in light of the parties' course of dealing since 2017, insisting on GIAs limited to specific projects.

As to the Sugarmont project, Zurich's claim of a $38 million exposure is greatly exaggerated. Zurich denied Sugarmont's bond claim and has not paid it. Ascent prevailed in defeating Sugarmont's motion for a TRO (which sought to remove Ascent's lien) and thus Ascent's lien still remains—thereby providing Zurich with a lien on the Sugarmont project just as it has asked for. The lien remains in place, and recovery, if any, is secured by the lien.

*Quia timet* relief is not available for an injury that has already occurred. The elements of a *quia timet* claim are: (1) a debt that will come due; (2) a principal's liability for that debt; (3) absent equitable relief, surety will be prejudiced because it will be forced to pay the debt. *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d at 34. Here, most of Zurich's claims relate to losses that it has paid over the past year and a half, and thus those losses do not justify *quia timet* relief.

### E. The Balance of Harms Weighs Against Zurich and In Favor of Denying the Requested Preliminary Injunction.

In evaluating the "balance of equities" factor, courts must weigh the threatened injury to the moving party against whatever damage the proposed injunction will cause the opposing party. *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 651-52 (10th Cir. 2004). The balance of equities here weighs heavily against granting Zurich's Motion and issuing a preliminary

injunction. As detailed above, the requested preliminary injunction will actually harm Ascent and Brad more than Zurich.

First, granting the Motion will provide Zurich effectively all of the relief requested in this lawsuit, thereby rendering a trial on the merits meaningless. Second, Zurich's actions (including but not limited to conflict of interest activity in hiring Ascent's Vice President to compete against Ascent), even before this meritless request for preliminary injunction, are quite literally destroying Ascent and preventing Ascent from meeting its obligations under the subject project contracts and, in turn, the subject bonds. Therefore, granting the Motion will be all but the final death knell for Ascent as a company. Third, even though Zurich previously obtained the rights to collect a total of $57,759,684 in accounts receivable on various Ascent projects, which is over five times the amount Zurich seeks in this lawsuit and Motion, Zurich continues to sit on its hands and fails to collect such funds from the project owners. *See generally*, B. Knowlton's Aff., Ex. 1, ¶ 13. Instead of focusing its efforts on collecting the $57 million to truly protect itself from the alleged harm it avers, Zurich requests unnecessary and drastic injunctive relief.

Zurich has effectively taken over Ascent and is now in charge of completing almost all of the Ascent projects. Any further damage from mismanagement of the projects, or failure to collect the millions of dollars in monies owed on those projects, cannot in equity and good conscience be considered a basis for taking more money from Ascent and Brad's personal assets. The stakes of this Motion are unequivocally higher for Ascent and Brad than for Zurich, and it is not even close. Even though it is sufficiently collateralized, Zurich's greed and bad faith knows no bounds.

For these reasons, the balance of equities and harm weighs heavily in favor of denying Zurich's request for preliminary injunction. The Court, therefore, must deny the Motion.

**F. Zurich Makes No Showing That an Injunction Would Not Be Adverse to the Public Interest.**

Despite its burden, Zurich fails to demonstrate that granting the injunction would not be adverse to the public interest. Instead, Zurich conveniently argues that no significant public interests are at stake here, but if there are, such favor Zurich. Such a position shows a fundamental misunderstanding of controlling law. Granting the injunction will certainly be adverse to the public interest. Permitting an over-collateralized surety to manipulate the judicial system by using pre-judgment procedures to obtain post-judgment relief, by way of additional, unnecessary security collateral, even though the surety has rights to approximately $57 million is accounts receivable, is directly adverse to the public interest. As with the other applicable elements for which Zurich has the burden to prove clearly and unequivocally, Zurich fails to satisfy this prong of the analysis.

**V. CONCLUSION**

Zurich has failed to carry its heightened burden of proof to prevail on its Motion. For the foregoing reasons, Defendants Ascent and Knowlton request that this Court deny Plaintiff's Motion in its entirety.

DATED: August 21, 2020                    Respectfully submitted,

THE RUDD FIRM, P.C.

/s/ *Jonathan R. Rudd*
Darrel Bostwick
Jonathan Rudd
Bruce Pritchett
Meagan Rudd
Nick Nielsen
*Attorneys for Defendants Ascent Construction and Brad Knowlton*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 21, 2020, a true and correct copy of the foregoing

**OPPOSITION TO ZURICH'S MOTION FOR TRO / PERMANENT INJUNCTION** was

filed with the Clerk of the Court using CM/ECF upon the following parties:

Connor L. Cantrell
THE HUSTEAD LAW FIRM, A PROFESSIONAL CORPORATION
4643 S. Ulster Street, Suite 1250
Denver, Colorado 80237
clc@thfl.com
*Attorneys for Zurich American Insurance Company*
*and Fidelity and Deposit Company of Maryland*

David Wahlquist
KIRTON MCCONKIE
50 East South Temple
Salt Lake City, Utah 84111
dwahlquist@kmclaw.com
*Attorneys for Defendants Scott Johansen*
*and Marlane Johansen*

Jon M. Memmott
MEMMOTT & ASSOCIATES
240 S. 200 W., P.O. Box 70
Farmington, Utah 84025
jon@memmottlaw.com

Shawn P. Bailey
PECK HADFIELD BAXTER & MOORE, LLC
399 North Main Street, Suite 300
Logan, Utah 84321
sbailey@peckhadfield.com
*Attorneys for Defendant Shondell Swenson*

*/s/ Bruce Pritchett*