THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>Plaintiff,<br><br>v.<br><br>ASCENT CONSTRUCTION, INC.; BRAD L. KNOWLTON; SHONDELL SWENSON; J. SCOTT JOHANSEN; AND MARLAINE JOHANSEN,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [167] PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**<br><br>Case No. 1:20-cv-00089-DBB<br><br>District Judge David Barlow |

Zurich American Insurance Co. and Fidelity and Deposit Co. of Maryland brings a motion to dismiss Ascent Construction's eight counterclaims.[1] For the reasons stated below, Zurich's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Ascent Construction ("Ascent") is a construction company founded by Brad Knowlton and Shondell Swenson in 2000.[2] Knowlton and Swenson's son, Dallas Knowlton, worked for Ascent in various positions, including vice president, until he left the company in February 2020.[3] Ascent entered into several bonded construction contracts in Utah,[4] and in order to obtain these, Ascent used Zurich American Insurance Company and Fidelity and Deposit Company of

---

[1] Zurich's Motion to Dismiss Defendant Ascent Construction, Inc.'s Counterclaims, ECF No. 167 at 1.
[2] Countercomplaint, ECF No. 154 at ¶ 5.
[3] *Id.* ¶ 7.
[4] *Id.* ¶¶ 14–15.

Maryland ("Zurich") as a surety.[5] Zurich issued performance and payment bonds to various project owners related to Ascent's construction projects.[6] Ascent and Zurich have executed several General Indemnity Agreements ("GIAs") between the parties documenting their relationship.[7]

Over time, several project owners declared Ascent to be in default on their projects.[8] In July 2020, Zurich filed suit against Ascent for breach of contract after Ascent failed to indemnify Zurich.[9] Ascent now brings eight counterclaims against Zurich,[10] which Zurich moves to dismiss under Federal Rule of Civil Procedure 12(b)(6).[11]

## STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[12] Each cause of action must be supported by sufficient, well-pled facts to be plausible on its face.[13] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, the court accepts all facts pleaded by the nonmoving party as true and grants all reasonable inferences from the pleadings in favor of the nonmoving party.[14] But the court disregards "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation[s]" of the

---

[5] *Id.* ¶ 10.
[6] *Id.*; *see* ECF No. 198-1 at 1.
[7] *See, e.g.*, ECF No. 167-3.
[8] *See* Complaint, ECF No. 2 at ¶ 25.
[9] *See id.*
[10] *See* ECF No. 154.
[11] ECF No. 167 at 1.
[12] Fed. R. Civ. P. 12(b)(6).
[13] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[14] *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).

law.[15] When evaluating a 12(b)(6) motion to dismiss, the court may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference."[16]

## DISCUSSION

Ascent alleges eight counterclaims: Breach of fiduciary duty, breach of the covenant of good faith and fair dealing, bad faith, tortious interference with existing contract and business relations, civil conspiracy, aiding and abetting breach of fiduciary duty, accounting, and tortious interference with prospective economic relations. The court will address these claims in turn.

### I. Breach of Fiduciary Duty

Ascent's first counterclaim is for breach of fiduciary duty.[17] "Breach of fiduciary duty claims generally require proof of four elements: the existence of a fiduciary relationship (such as attorney-client, physician patient, or insurer-insured); breach of the fiduciary duty; causation, both actual and proximate; and damages."[18]

The first question in resolving Zurich's motion to dismiss this counterclaim is if there was a fiduciary relationship between Ascent and Zurich. In *First Security Bank of Utah N.A. v. Banberry Development Corp.*, the Utah Supreme Court noted that "Whether or not a confidential or fiduciary relationship exists depends on the facts and circumstances of each individual case."[19] The Court found that "there are generally two types of fiduciary relationships[,]" those that are

---

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). The court reminds the parties that its opinion merely determines whether a cognizable claim has been stated for pleading purposes. None of the court's statements herein may be used to suggest that the court has found that a claim has merit.
[16] *Smith v. United States*, 561 F.3d 1090, 98 (10th Cir. 2009) (citations omitted).
[17] ECF No. 154 at ¶¶ 27–32.
[18] *Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 417 P.3d 95, 109 (Utah 2018).
[19] *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1332 (Utah 1990) (cleaned up).

"specifically created by contract" and those that are "implied in law due to the factual situation."[20]

Ascent argues that there are three provisions in the contact between it and Zurich which make Zurich a fiduciary: "(1) takeover (§8); (2) assignment (§5); and power of attorney (§17)."[21] None of these provisions say anything about Zurich being a fiduciary or having any particular heightened duty to Ascent. Instead, the provisions state what rights Zurich has, as well as articulate what Ascent agrees to do. The contact does not "specifically create[]" a fiduciary relationship, and the court declines the invitation to write one into the contract.

Since no fiduciary duty is "specifically created" by the contract in question, the other possible source of a fiduciary duty is one "implied in law due to the factual situation."[22] The gist of the tripartite relationship between Zurich, Ascent, and the project owners is essentially as follows. In order to obtain and keep contracts with the project owners, Ascent needed to obtain the services of a surety (here, Zurich) who would guarantee the completion of construction projects or pay damages to the project owners in the event that Ascent defaulted on its construction contracts with the project owners.[23] To induce Zurich to cover any bonded claims made by project owners, Ascent agreed to pay premiums, pledge collateral, and authorize Zurich to take over any bonded project in default, among other things.

On the current record, this "factual situation" does not imply a fiduciary duty running from Zurich to Ascent. As both parties note, a key feature of a fiduciary under Utah law is "a

---

[20] *Id.*
[21] Ascent's Corrected Memorandum in Opposition to Zurich's Motion to Dismiss Counterclaims, ECF No. 198 at 27.
[22] *First Sec. Bank*, 786 P.2d at 1332.
[23] *See* ECF No. 198-1 at 2.

duty to act primarily in the interest of another."[24] But the facts of this case do not suggest that Zurich "had a duty to act primarily in the interest of" Ascent. Instead, these two businesses entered into an arms-length contract with each other in which each sought certain benefits and assumed certain obligations. Ascent got the benefit of Zurich's guarantees to the protect owners so that Ascent could secure the project owners' contracts.[25] In exchange, Ascent agreed to pay premiums, pledge collateral, and authorize takeover of any project in default, among other things.[26] Zurich got the benefit of the premiums and expansive rights of self help in the event of default.[27] In exchange, Zurich agreed to be liable to project owners for Ascent's failure to perform any bonded construction project.[28] This bargained-for relationship between businesses does not create a duty for Zurich to act primarily in Ascent's interest. Certainly, Zurich must live up to its contractual obligations. And, as discussed *infra*, it cannot disclaim the implied covenant of good faith and fair dealing that is inherent in every contract under Utah law. But none of that requires that it act "primarily" in Ascent's behalf.

Ascent notes that Utah statute defines "insurance" to include "a contract of guaranty or suretyship entered into by the guarantor or surety as a business and not merely incidental to a business transaction."[29] The statute, however, does not say that the surety–principal relationship is fiduciary in nature. Additionally, the Utah Supreme Court has made it clear that not all

---

[24] Zurich's Reply to Ascent's Response to Motion to Dismiss Ascent's Counterclaims, ECF No. 207 at 5; ECF No. 198 at 26.
[25] *See* ECF No. 198-1 at 2.
[26] *See* ECF No. 167-3 at 1–3.
[27] *See id.*
[28] *See* ECF No. 198-1 at 2.
[29] Utah Code Ann. § 31A-1-301(92)(b)(ii). The statute also defines "Surety insurance" to include "a guarantee against loss or damage resulting from the failure of a principal to pay or perform the principal's obligations to a creditor or other obligee. . . ." *Id.* § 31A-1-301(176)(a).

5

insurance relationships are fiduciary in nature. In describing the types of insurer–insured relationships in which a fiduciary duty may arise, the Court found duties like the duty to defend an action against their insureds and the duty to indemnify insureds for valid claims.[30]

Here, no such duties appear to be present. Nothing in the record suggests that Zurich had the duty to defend Ascent or to indemnify it. In fact, in Ascent's relationship with Zurich, *Ascent agrees to indemnify Zurich*, not the other way around.[31] If Ascent defaults on a project, Zurich has an obligation to the project owners to complete the project, fund the completion, or pay damages. The project owners, not Ascent, are effectively the insureds.

So, while a suretyship is defined as insurance under Utah law, and while the court does not find that a surety can never be found to be a fiduciary, the record here does not suggest that Zurich is Ascent's insurer or that Zurich owes a fiduciary duty to Ascent. Accordingly, Ascent has failed to demonstrate that Zurich owes it a fiduciary duty, and its breach of fiduciary duty claim must be dismissed.

## II. Breach of Covenant of Good Faith and Fair Dealing

Ascent's second counterclaim is for breach of the covenant of good faith and fair dealing.[32] The covenant of good faith and fair dealing is an implied covenant in every contract that "contracting parties 'refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract.'"[33] The function of the implied covenant is to "infer[] as a term of every contract a duty to perform in the good faith manner that the parties

---

[30] *See Fire Ins. Exch. v. Oltmanns*, 416 P.3d 1148, 1160 (Utah 2018) (Durham, J., concurring in part).
[31] ECF No. 167-3 at § 2.
[32] ECF No. 154 at ¶¶ 33–39.
[33] *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 816 (Utah 2011) (quoting *Oakwood Vill. LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1239 (Utah 2004)).

surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute."[34]

In this case, Ascent alleges that a contract existed between Ascent and Zurich in the form of the General Indemnity Agreement and the underlying construction bonds.[35] Thus, Ascent claims that it was entitled to receive the fruits of these contracts.[36] At the motion to dismiss stage, Ascent's factual allegations, if true—that Zurich encouraged project owners to default, secretly convinced Ascent's vice president to create a competing company, and directed Dallas Knowlton to encourage Ascent subcontractors to make claims against the surety's bonds[37]—state a cognizable claim for breach of the covenant of good faith and fair dealing.

Zurich argues that Ascent's claim is legally insufficient because the applicable contracts (the bonds and GIAs) "do not contain terms meant to benefit Ascent" and the "'fruits of the contract' were never intended to flow to Ascent."[38] But in a contract there must be *some* benefit intended to flow to each of the parties. Ascent has alleged facts sufficient to state a claim that Zurich deprived it of the "fruits of the contract." Thus, at the motion to dismiss stage, Ascent's factual allegations, if true, state a cognizable claim that Zurich deprived Ascent of that benefit.

Finally, Zurich argues that Ascent's claim is barred by the waiver in the GIAs, which granted Zurich the "'absolute and unconditional' right to perform Ascent's projects, and to pay, compromise, or settle any claim."[39] But the obligation of good faith and fair dealing applies even

---

[34] *Id.*
[35] ECF No. 154 at ¶ 35; ECF No. 198 at 5.
[36] ECF No. 154 at ¶ 36.
[37] *Id.* ¶¶ 22, 37.
[38] ECF No. 167 at 13.
[39] *Id.* at 17, ECF No. 167-3 at ¶ 3.

to the execution of express contractual rights and cannot be disclaimed.[40] As such, Ascent has properly pled a claim for breach of the covenant of good faith and fair dealing sufficient to survive a motion to dismiss.

### III. Bad Faith

Ascent's third counterclaim is for bad faith.[41] In a contractual relationship, "bad faith" is not generally a distinct cause of action from the breach of the implied covenant of good faith and fair dealing.[42] The Utah Supreme Court has recognized a tort cause of action for breach of an insurer's obligation to bargain in a third-party context, but has not extended that cause of action to other situations.[43] Ascent's claim for bad faith is encompassed by its claim for breach of the covenant of good faith and fair dealing, and Ascent cannot seek punitive damages for that claim.[44] The motion to dismiss is granted with respect to Ascent's bad faith claim.

---

[40] *Olympus Hills Shopping Ctr., Ltd. v. Smith's Food & Drug Ctrs., Inc.*, 889 P..2d 445, 450 (Utah Ct. App. 1994) ("Our courts have determined that a party must exercise express rights awarded under a contract reasonably and in good faith.").
[41] ECF No. 154 at ¶¶ 40–45.
[42] *See Colony Ins. Co. v. Human Ensemble, LLC*, 299 P.3d 1149, 1151–52 (Utah Ct. App. 2013) ("Human Ensemble then counterclaimed against Scottsdale, asserting claims for . . . breach of the implied covenant of good faith and fair dealing (the bad faith claim). . . ."); *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 797 (Utah 1985) (referring to an "implied covenant [of good faith and fair dealing] or 'bad faith' claim.").
[43] *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 799 (Utah 1985). Even though Utah statute defines a suretyship agreement as "insurance," a conflict between the two parties in the surety relationship does not implicate the considerations that the Utah Supreme Court recognized are present in the third-party relationship. *Id.* ("In a third-party situation, the insurer controls the disposition of claims against its insured, who relinquishes any right to negotiate on his own behalf. . . . An insurer's failure to act in good faith exposes its insured to a judgment and personal liability in excess of the policy limits."). The dispute here bears more resemblance to a usual contract dispute than a dispute between an insurer and an insured over failure to bargain or settle a claim.
[44] *Norman v. Arnold*, 57 P.3d 997, 1006 (Utah 2002) ("The general rule is that punitive damages cannot be awarded for a breach of contract. . . . Punitive damages are, however, allowed where the breach of contract amounts to an independent tort." (citations and internal quotations omitted)).

### IV. Tortious Interference with Existing Contract

Ascent's fourth counterclaim is for tortious interference with existing contract and business relations.[45] To sustain a claim for intentional interference with economic relations a plaintiff must prove: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff."[46] The element of "improper means" is part of the prima facie case for intentional interference with contracts; "improper means" are actions that are "contrary to a statute, regulation, common law rule, or an established standard of a trade or profession."[47] Improper means include "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood[s]."[48]

Here, Ascent has alleged that "Zurich proactively encouraged some or all of the project owners . . . to default on their contracts [with Ascent]"[49] and that the losses of these contracts "caused Ascent to incur damages."[50] For pleading purposes, these factual allegations satisfy the first and third elements of a claim for tortious interference with a contract. Ascent also alleges that "[w]hile Dallas was Ascent's vice president, Zurich directed him to promise project owners . . . that Ascent would complete services outside the scope of the original project contracts, plans, and drawings, creating false expectations so that said project owners would

---

[45] ECF No. 154 at ¶¶ 46–53.
[46] *C.R. England v. Swift Transp. Co.*, 437 P.3d 343, 349 (Utah 2019).
[47] *Id.* at 353.
[48] *Id.* (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 307 (Utah 1982)).
[49] ECF No. 154 at ¶ 49(a).
[50] *Id.* ¶ 51.

become dissatisfied and default."[51] If true, this could constitute deceit or misrepresentation and satisfy the "improper means" element of a tortious interference claim.

However, the economic loss rule prohibits tort claims for purely economic loss absent any physical property damage or bodily injury.[52] In *SME Industries*, the Utah Supreme Court suggested that the economic loss rule does not apply to intentional torts including intentional interference with contract.[53] But since *SME Industries* was decided, the Court adopted a new interpretation of the economic loss rule and the court has stated that the *SME Industries* dicta is no longer persuasive.[54] This court is bound by the decisions of the Utah Supreme Court when applying Utah law, and thus concludes that Utah's common law does not recognize an exception to the economic loss rule for intentional torts.[55]

There is an exception to the economic loss rule when "a duty exists independent of any contractual obligations between the parties."[56] "All contract duties, and all breaches of those duties . . . must be enforced pursuant to contract law."[57] As discussed above, Ascent has failed to show that Zurich owes it an independent fiduciary duty. Ascent argues that the economic loss

---

[51] *Id.* ¶ 49(j).
[52] *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 242 (Utah 2009).
[53] *SME Indus., Inc. v. Thompson, Ventulett, Stainback, and Associates, Inc.*, 28 P.3d 669, 680 n.8 (Utah 2001) ("However, plaintiffs may recover purely economic losses in cases involving intentional torts such as fraud, business disparagement, and intentional interference with contract.").
[54] *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 13 (Utah 2003) ("Since they were decided before we adopted Colorado's interpretation [of the economic loss rule], and Wyoming clearly follows the independent duty interpretation found in *Town of Alma*, we do not find *American Towers Owners Ass'n* and *SME Industries* persuasive authority regarding the current state of the economic loss rule in Wyoming or Utah."); *see also KTM Health Care Inc. v. SG Nursing Home*, 436 P.3d 151, 170 (Utah Ct. App. 2018) ("As an initial matter, the footnote in *SME Industries* was written prior to *Hermansen*, in which our supreme court adopted the 'independent duty' formulation of the economic loss rule. Indeed, our supreme court has itself disavowed its *SME Industries* footnote for that precise reason." (citations omitted)).
[55] *See HealthBanc Int'l, LLC v. Synergy Worldwide, Inc*, 208 F. Supp. 3d 1193, 1198 (D. Utah 2016).
[56] *Reighard v. Yates*, 285 P.3d 1168, 1176 (Utah 2012) (quotations omitted).
[57] *Id.*

rule does not bar its tortious interference claims because Zurich owed Ascent an independent duty of care imposed by Utah state statute.[58] Each GIA states that "[t]his Agreement constitutes a security agreement to Surety in accordance with the Uniform Commercial Code or similar statute in any jurisdiction,"[59] and Utah Code § 70A-9a-207(1) (which incorporates the UCC) states that "a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession."[60] But the UCC duty to use reasonable care in the custody of secured collateral is not an independent tort duty that can defeat the economic loss rule. Instead, the UCC duty is a contractual duty that is specifically incorporated into the contractual language of the GIAs. Additionally, Ascent misstates the holding of the *Big Squid* case.[61] Instead of holding that "the economic loss doctrine did not bar the tort claim when there was a separate tort alleged," *Big Squid* found that "the economic loss rule is inapplicable to tortious interference that occurred after the parties terminated contractual relations."[62] *Big Squid* is inapposite here because Zurich's alleged tortious interference occurred during the ongoing contractual relationship between Ascent and Zurich. Thus, the economic loss rule dictates that Ascent's remedies lie in contract, not tort.

Ascent can point to no tort duty between it and Zurich that exists independent of the contract. Thus, its claim for tortious interference is barred by the economic loss rule and the Zurich's motion to dismiss is granted with respect to this claim.

---

[58] ECF No. 198 at 19.
[59] ECF No. 167-3 at § 7.
[60] Utah Code Ann. § 70A-9a-207(1).
[61] *See* ECF No. 198 at 21–22.
[62] *Big Squid, Inc. v. Domo, Inc.*, No. 2:19-cv-193, 2019 WL 3555509, at *16 (D. Utah Aug. 5, 2019).

### V.   Civil Conspiracy

Ascent's fifth counterclaim is for civil conspiracy.[63] "In order to plead a claim for civil conspiracy, a complaint must allege sufficient facts to establish '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'"[64]

Here, Ascent has alleged that Zurich, Swenson, and Dallas Knowlton agreed to "destroy and/or financially harm Ascent" and to "subsequently cover up such illegal activities and avoid the potential liability for such activities. . . ."[65] For pleading purposes, these allegations satisfy the first two elements of a claim for civil conspiracy, that there was a combination of two or more persons and an object to be accomplished. Ascent further alleges that Zurich helped Dallas "create a competing construction company," Zurich encouraged "various Ascent subcontractors to make claims against Zurich's bonds," and Zurich directed Dallas to intentionally fail to communicate with project owners so that "the owners would become dissatisfied with Ascent and default under the terms of their contracts."[66] Assuming these allegations are true and drawing reasonable inferences in favor of Ascent, these factual allegations could satisfy the third element of a civil conspiracy claim because they plausibly raise an inference that there was a meeting of the minds between Dallas and Zurich to financially harm Ascent. Ascent has also

---

[63] ECF No. 154 at ¶¶ 54–63.
[64] *Harvey v. Ute Indian Tribe of Uintah and Ouray Reservation*, 416 P.3d 401, 425 (Utah 2017) (quoting *Pohl, Inc. of America v. Webelhuth*, 201 P.3d 944, 954–55 (Utah 2008)).
[65] ECF No. 154 at ¶ 55.
[66] *Id.* ¶ 59.

alleged a counterclaim that Zurich aided and abetted Dallas's breach of fiduciary duty.[67] If true, this could satisfy the fourth element of a civil conspiracy claim (one or more unlawful, overt acts). Finally, Ascent alleges that it was damaged by Zurich's acts,[68] satisfying the final element to properly plead a claim for civil conspiracy.

Zurich argues that Ascent's counterclaim for civil conspiracy fails as a matter of law because Ascent's underlying tort claims are insufficient.[69] But as discussed below, Ascent adequately pleads a claim for aiding and abetting breach of fiduciary duty. At this stage, this is sufficient to sustain Ascent's claim for civil conspiracy. As such, Zurich's motion to dismiss is denied with respect to this claim.

## VI. Aiding and Abetting Dallas's Breach of Fiduciary Duty

Ascent's sixth counterclaim is for aiding and abetting Dallas Knowlton's breach of fiduciary duty.[70] Claims for aiding and abetting fiduciary duty have been implicitly recognized by the Utah Supreme Court and are explicitly recognized by the Utah Court of Appeals.[71] "A party aids and abets the breach of fiduciary duty when it 'knowingly join[s] a fiduciary in fraudulent acts, whereby the fiduciary breaches his or her fiduciary duties' and is therefore 'jointly and severally liable with that fiduciary.'"[72] "But 'the gravamen of the claim of aiding and abetting a breach of fiduciary duty is the defendant's knowing participation in the fiduciary's breach.'"[73]

---

[67] *Id.* ¶ 64–67.
[68] *Id.* ¶¶ 19–21, 61.
[69] ECF No. 167 at 20.
[70] ECF No. 154 at ¶¶ 64–67.
[71] *See Mower v. Simpson*, 278 P.3d 1076, 1087 (Utah Ct. App. 2012).
[72] *Hussein v. UBS Bank USA*, 446 P.3d 96, 108 (Utah Ct. App. 2019) (quoting *Russell/Packard Dev., Inc. v. Carson*, 78 P.3d 616, 626 (Utah Ct. App. 2003)).
[73] *Id.* (quoting *Mower*, 278 P.3d at 1087).

In *Hussein v. UBS Bank*, the Utah Court of Appeals held that a plaintiff could not sustain a claim for aiding and abetting breach of fiduciary duty where the defendant ordered the sale of collateral and a loan agreement provided that "if [the defendant] deemed the collateral insecure, it could, 'in its sole and absolute discretion, liquidate, withdraw or sell all or any part of the Collateral.'"[74] Because of the "sole and absolute discretion" afforded to the defendant by contract, the court found that the defendant did not aid or abet a breach of fiduciary duty.[75]

Here, drawing reasonable inferences in favor of Ascent, Ascent adequately alleges facts to sustain a claim for aiding and abetting breach of fiduciary duty. Ascent alleges that Dallas was a corporate officer of Ascent[76]—thus, he owed a fiduciary duty to the company.[77] And Ascent adequately alleges that Zurich knowingly participated in Dallas's breach of fiduciary duty: Ascent alleges that Zurich "secretly hired [Dallas] to complete some of the Ascent projects" while Dallas was Ascent's vice president[78] and that Zurich "directed [Dallas] to encourage various Ascent subcontractors to make claims against Zurich's bonds" while Dallas was Ascent's vice president.[79] From these factual allegations, it is reasonably inferred that Zurich knowingly participated in these actions.

Zurich argues that Ascent's claim still fails as a matter of law because of the language in the GIAs that grant Zurich an "absolute and unconditional right" to perform Ascent's projects.[80] But this language does not constitute a waiver to challenge allegedly unlawful conduct. Unlike

---

[74] *Hussein*, 446 P.3d at 108.
[75] *Id.*
[76] ECF No. 154 at ¶ 65.
[77] *See* Utah Code Ann. § 16-10a-840.
[78] ECF No. 154 at ¶ 66(b).
[79] *Id.* ¶ 66(g).
[80] ECF No. 207 at 12.

14

the contract with a narrower scope in *Hussain*, which granted the defendant the absolute discretion to liquidate collateral if it deemed the collateral insecure, here the contract cannot be read to grant Zurich the right to take any action whatsoever, regardless of if it violates the law, to perform Ascent's projects.[81] Thus, the language of the GIAs does not preclude Ascent's claim for aiding and abetting breach of fiduciary duty. Zurich's motion to dismiss is denied with respect to this claim.

## VII. Accounting

Ascent's seventh counterclaim is for an accounting.[82] An accounting is "[a] legal action to compel a defendant to account for and pay over money owed to the plaintiff but held by the defendant."[83] An action for accounting may be legal or equitable.[84] But accounting is not an independent legal cause of action when it is sought in connection with a tort or contractual claim for damages, absent statutory authority.[85] And "[t]he necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law."[86]

Ascent's claim for an accounting neither cites statutory authority that authorizes an accounting under these circumstances nor alleges the absence of an adequate remedy at law. Zurich avers that it will "fully comply with any applicable [discovery] obligations under Fed. R.

---

[81] Contracts that violate public policy are void. *See Wittingham, LLC v. TNE Ltd. P'ship*, 469 P.3d 1035, 1043 (Utah 2020).
[82] ECF No. 154 at ¶¶ 68–73.
[83] *Failor v. MegaDyne Med. Prods., Inc.*, 213 P.3d 899, 905 (Utah Ct. App. 2009) (quoting *Black's Law Dictionary* (7th ed. 1999)).
[84] *Failor*, 213 P.3d at 905 (citing *Green v. Palfreyman*, 166 P.2d 215, 219 (Utah 1946)).
[85] *See GLFP, Ltd. v. CL Mgmt., Ltd.*, 163 P.3d 636, 641 (Utah Ct. App. 2007); *King v. XPO Logistics*, No. 2:16-cv-434-DN, 2017 WL 213791, at *4 (D. Utah 2017).
[86] *Failor*, 213 P.3d at 905 (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962)).

Civ. P. 26 and, as necessary, . . . prove its damages at trial."[87] Ascent has not alleged that it lacks an adequate remedy at law to account for its receivables under its contracts with various project owners. As such, Zurich's motion to dismiss is granted with respect to Ascent's seventh claim.

### VIII. Tortious Interference with Prospective Economic Relations

Ascent's final counterclaim is for tortious interference with prospective economic relations.[88] Claims for tortious interference with prospective economic relations are treated identically to claims for tortious interference with existing economic relations under Utah law.[89] Both claims are encompassed by a single tort of "intentional interference with economic relations."[90] Thus, Ascent's eighth counterclaim is substantially identical to its fourth counterclaim. Ascent's eighth counterclaim is dismissed.

### ORDER

Zurich's motion to dismiss is GRANTED with respect to Ascent's first, third, fourth, seventh, and eighth counterclaims and DENIED with respect to Ascent's second, fifth, and sixth counterclaims.

Signed January 3, 2022.

BY THE COURT

_____
David Barlow
United States District Judge

---

[87] ECF No. 167 at 24 n. 6.
[88] ECF No. 154 at ¶¶ 74–80.
[89] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991) ("We first recognized the tort of intentional interference with economic relations in *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293 (Utah 1982). The tort protects both existing contractual relationships and prospective relationships of economic advantage not yet reduced to a formal contract.").
[90] *Id.*