IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ZURICH AMERCIAN INSURANCE COMPANY AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND, <br><br> Plaintiff, <br> v. <br><br> ASCENT CONSTRUCTION, INC., et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S [439] MOTION TO WITHDRAW <br><br> Case No. 1:20-cv-00089-RJS <br><br> Judge Robert J. Shelby <br><br> Magistrate Judge Cecilia M. Romero |

## I.     BACKGROUND

This matter is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) (ECF 440). Plaintiff Zurich American Insurance Company and Fidelity and Deposit Company of Maryland's (Zurich) filed suit to enforce indemnity agreements allegedly signed by the named defendants in this matter (ECF 2). On September 28, 2023, the court ruled on summary judgment motions filed by the parties (the Summary Judgment Order) (ECF 419) and entered a judgment in favor of Zurich exceeding $26 million dollars (ECF 420). Before the court is Zurich's Motion to Withdraw Exhibit B-1 from the Record *Nunc Pro Tunc* to October 27, 2023 (Motion to Withdraw) (ECF 439). Defendant Shondell Swenson (Swenson) submitted a Response (ECF 453). Having carefully considered the relevant filings, the court finds that oral argument is not necessary and will decide this matter based on written memoranda. *See* DUCivR 7-1(g). For the reasons set forth below, the court GRANTS the Motion to Withdraw (ECF 439).

## II.     DISCUSSION

On October 27, 2023, Zurich filed a Status Report (ECF 428) in response to the Summary Judgment Order (ECF 419). In support, Zurich submitted Exhibit B, the Affidavit of Connor L.

1

Cattrell, Esq., and Exhibit B-1 Parts 1–5 (collectively, Exhibit B-1) (ECF 428-3 to ECF 428-7), which included 3,104 pages of billing entries by The Hustead Law Firm. On November 20, 2023, Zurich filed the Motion to Withdraw seeking to remedy this "inadvertent disclosure of privileged information," and requesting to remove "Exhibit B-1 from the docket and mak[e] further redactions before re-filing" (ECF 439 at 9). Swenson does not object to Exhibit B-1 being filed under seal from the public but does assert that she is "entitled to review the unredacted attorneys' fee summaries contained in Zurich's Exhibit B-1 and to argue to a jury that the fees sought are unreasonable and otherwise non-compensable against her" (ECF 453 at 1).

Zurich argues that Exhibit B-1 should be withdrawn from the docket because the inadvertent disclosure of "the billing entries summarize attorney-client privileged communications, attorney work product, and disclose confidential settlement communications" (ECF 439 at 4). Zurich further argues that fairness supports a finding that Zurich did not waive privilege (*id.* at 10) and requests that the court "enter an order prohibiting any party from using the Confidential Information in this proceeding or any other proceeding" (*id.* at 4). Swenson responds that Exhibit B-1 should not be withdrawn because Zurich has waived attorney-client privilege by "placing the billing records at issue" (ECF 453 at 2–5). Swenson further argues that the disclosure was not inadvertent, and that fairness requires "the opportunity to view all the evidence upon which Zurich's claim is based" (*id.* at 6).

The Standard Protective Order in effect in this case under DUCivR 26-2 governs inadvertently produced material and provides that:

> [I]f a party through inadvertence produces or provides discovery that it believes is subject to a claim of attorney-client privilege or attorney work product, the producing party may give written notice to the receiving party that the document or thing is subject to a claim of attorney-client privilege or attorney work product and request that the document or thing be returned to the producing party. The receiving party shall return to the producing party such document or thing. Return of the document or thing shall not constitute an admission

or concession, or permit any inference, that the returned document or thing is, in fact, properly subject to a claim of attorney-client privilege or attorney work product, nor shall it foreclose any party from moving the Court pursuant to Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502 for an Order that such document or thing has been improperly designated or should be produced.

Standard Protective Order (SPO) ¶ 10; DUCivR 26-2.

The court first addresses Swenson's argument that Zurich has created an "at issue" waiver of privilege. "Rule 501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity cases." *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998). Although Swenson has correctly identified that Utah state law applies in this case, she relies on D.C. Circuit case, *Ideal Electronics Security Co. v. International Fidelity Ins. Co.*, 129 F.3d 143 (D.C. Cir. 1997), to oppose Zurich's request to protect attorney-client privilege (*See* ECF 453 at 3–5).

Under Utah law, "[o]ne common way to waive the attorney-client privilege is to place at issue matters that implicate attorney-client communications." *Jones Waldo Holbrook & McDonough PC v. 3293 Harrison Blvd. LLC*, 524 P.3d 1022, 1028 (Utah Ct. App. 2023) (quoting *Chard v. Chard*, 456 P.3d 776, 792 (Utah Ct. App. 2019)). "[A] party 'cannot invoke the attorney-client privilege to deny [another party] access to the very information that [party] must refute in order to succeed against' the privilege holder's claim or defense." *Id.* (quoting *Terry v. Bacon*, 269 P.3d 188 (Utah Ct. App. 2011)).

In *Jones Waldo*, the court was "not persuaded that a mere denial of allegations in a complaint is enough to waive the attorney-client privilege simply because the allegations concern matters on which confidential attorney-client communications may shed light." *Id.* Here, Zurich submitted the alleged inadvertent disclosures in its Status Report and Response (ECF 439 at 2; ECF 428) to the court's Summary Judgment Order (ECF 419). This was a response to a court order

and thus the court does not view the disclosure as one that puts privileged information at issue. It is Swenson, not the privilege holder, Zurich, who wishes to center a defense around privileged communications (*See* ECF 453 at 5–6). Furthermore, mere compliance to a court order is not enough to create "at issue" waiver simply because examination of the privileged information may "shed light" on reasonableness of attorney's fees. *See Jones Waldo*, 524 P.3d at 1028. The court can determine the reasonableness of attorney's fees without needing to review privileged information. *See* Utah R. Civ. P. 26(b)(6) ("In ordering discovery of [documents], the court must protect against disclosure of… legal theories of an attorney or other representative of a party.").

The court now addresses Swenson's argument that Zurich has advertently disclosed privileged information. Again, Swenson relies incorrectly on Federal Circuit law in her analysis of this issue (*See* ECF 453 at 5–6). As with "at issue" waiver, Rule 501 of the Federal Rules of Evidence dictates that state law governs decisions on voluntary disclosure of privilege in diversity cases. *See Frontier*, 136 F.3d at 699. The privilege claimant "has 'the burden of proof to establish the Attorney/Client privilege' as well as 'the burden to show the privilege was not waived.'" *Walker v. 300 S. Main, LLC*, No. 2:05-cv-442 TS, 2007 WL 3088097, at *1 (D. Utah Oct. 22, 2007) (quoting *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 303 (D. Utah 2002)) (applying Utah State law regarding attorney-client privilege). Utah state courts delineate "five elements" to determine whether a disclosure constitutes waiver:

> (1) the reasonableness of the precautions to prevent inadvertent disclosure; 2) the time taken to rectify the error; 3) the scope of the discovery; 4) the extent of the disclosure; and 5) the overreaching issue of fairness.

*Gold Standard, Inc. v. American Barrick Resources Corp.*, 805 P.2d 164, 171 (Utah 1990) (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103 (S.D.N.Y.1985), *aff'd,* 799 F.2d 867 (2d Cir. 1986)).

In *Gold Standard, Inc.*, the court found that the privilege holder waived attorney-client privilege when they voluntarily produced documents containing privileged information. *Gold Standard, Inc.*, 805 P.2d at 171. The court held that privilege was waived because the privilege holder waited until after the documents were allowed to "become part of a general reading file circulated among its employees without much regard for confidentiality," used the information in five different depositions, and did not formally move for a protective order until months after the privilege holder knew of their public disclosure. *See id.* at 172 ("Delay in failing to object and in failing to move for protection calls into question [the privilege-claimant's] assertion that the memoranda are [privileged].").

Here, Zurich has not exhibited any of the behaviors described in *Gold Standard Inc.* to constitute advertent waiver of privilege. Zurich has explained that multiple people worked on the submission of 3,104 pages of billing entries for the court's review (ECF 439 at 2). Zurich further explained that in reviewing the pages, some redactions were not "properly saved" and thus confidential information was inadvertently submitted (ECF 439 at 3). Given the lengthy scope of the billing entries, the court does not find Zurich's precautions to prevent inadvertent disclosure unreasonable under *Gold Standard, Inc.* elements one and three. Further, the extent of the disclosure was limited to a specific document filed on the court docket and thus the court does not find the extent of the disclosure offends element four as to weigh against Zurich. Zurich contends that it was informed of the disclosure on November 14, 2023, notified counsel for Swenson on November 15, 2023, and notified the court on November 20, 2023 (ECF 439 at 9). In "less than 24 hours" of Zurich realizing its mistake, it sent a clawback letter informing Swenson's counsel of the mistake and requesting the return of confidential information in accordance with the Standard Protective Order (ECF 439 at 6–7). The Standard Protective Order, which protects

inadvertent disclosure of privileged information, and Zurich's prompt diligence in correcting the mistake weigh in favor of Zurich under element two. The court does not find that privilege has been waived regarding attorney-client privileged communications, attorney work product, and confidential settlement communications.[1]

The court now turns to the question of whether Swenson can overcome privilege despite inadvertent disclosure. Under Utah law "a party seeking discovery may overcome the privilege by showing (1) that they have a 'substantial need of the materials' and (2) that they are 'unable without undue hardship to obtain substantially equivalent materials by other means.'" *Jones Waldo*, 524 P.3d at 1029 (quoting Utah R. Civ. P. 26(b)(6)). However, Swenson has not addressed this standard in their Response to the Motion, nor has she made any argument under this standard as to how privilege may be overcome (*See* ECF 453). Thus, the court will not consider any further argument under Rule 26(b)(6) of the Utah Rules of Civil Procedure.

### III.    CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's Motion to Withdraw (ECF 439) is GRANTED and Exhibit B-1 (ECF 428-3 to ECF 428-7) is stricken from the docket.

IT IS SO ORDERED.

DATED this 23 September 2024.

_Cecilia M. Romero_
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah

---

[1] The parties also address public policy ideas of fairness which overlap with *Gold Standard, Inc.'s* fifth element (ECF 439 at 10–11; ECF 453 at 6), however, given the failure to rely on controlling case law to support these arguments, the court does not consider these arguments further.