Jon M. Memmott (No. 2235)
**Memmott & Associates**
5505 East McLellan, No. 36
Mesa, Arizona 85205
jon@memmottlaw.com

Dennis K. Blackhurst *(pro hac vice)*
L. Richard Williams *(pro hac vice)*
**WILLIAMS BLACKHURST TERHUNE PLLC**
701 North 44th Street
Phoenix, Arizona 85008
dblackhurst@wbt.esq
rwilliams@wbt.esq

*Attorneys for Defendant Shondell Swenson*

---

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>Plaintiff,<br><br>v.<br><br>ASCENT CONSTRUCTION, INC., *et al.*,<br><br>Defendants. | **MOTION FOR RECONSIDERATION PURSUANT TO FED. R. CIV. P. 54(b)**<br><br>Case Number: 1:20-cv-00089-RJS<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Cecelia M. Romero |

Defendant Shondell Swenson respectfully moves the court, pursuant to Federal Rule of Civil Procedure 54(b), to reconsider only a part of its September 28, 2023 Summary Judgment Order (Doc. 419) granting summary judgment in favor of Zurich American Insurance Company and Fidelity Deposit Company of Maryland ("Zurich") against Shondell Swenson.  Ms. Swenson believes the Summary Judgment Order demonstrates a clear error of fact and law and respectfully requests that the Court reconsider that specific portion of its Order: the Court's finding that Ms. Swenson signed and is liable on the General Indemnity Agreement ("GIA") for the Station at Gardner Mill ("SGM") project.

## LEGAL STANDARD

Rule 54(b) provides:

When an action presents more than one claim for relief … the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, **any order or other decision**, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and **may be revised at any time before the entry of a judgment** adjudicating all the claims and all the parties' rights and liabilities.[1]

Under Rule 54(b), a motion for reconsideration is appropriate to "correct a clear error or prevent manifest injustice," including situations in which the Court has "misapprehended the facts, a party's position, or the controlling law."[2] "[C]lear error normally requires the definite and firm conviction that a mistake has been committed based on the entire evidence, or that a particular factual determination lacks any basis in the record."[3]

Ms. Swenson respectfully requests that the Court reconsider its finding that Ms. Swenson signed and is liable under the SGM GIA under this standard.

## THE SUMMARY JUDGMENT ORDER

On September 28, 2023, the District Court granted partial summary judgment on certain of Zurich's claims against Ms. Swenson and other defendants. The Court's ruling against Ms. Swenson in favor of Zurich on its breach of contract and specific performance claims is premised on Ms. Swenson's purported admission that she signed two separate indemnity contracts, the 2017

---

[1] Fed. R. Civ. P. 54(b) (emphasis added).
[2] *King v. IC Group, Inc.*, 743 F.Supp.3d 1346, 1351-52 (D. Utah 2024) (Shelby, J.); *Gale v. Uintah Cnty.*, 2021 WL 4553218, * 3 (D. Utah Oct. 5, 2021) (Shelby, J.).
[3] *King*, 743 F.Supp.3d at 1352.

Sugarmont GIA and the SGM GIA.  While Ms. Swenson disputes liability on the GIAs altogether, this Motion requests only reconsideration of the Court's finding of liability on the SGM GIA. There is no competent evidence in the record that Ms. Swenson signed the SGM GIA.

The Court's September 28, 2023 Memorandum Decision and Order (the "Summary Judgment Order") includes a number of findings of fact with respect to Ms. Swenson and the SGM GIA.[4]  The Summary Judgment Order states,

> In 2017, Ascent and the individual indemnitors [including Ms. Swenson] **signed two new GIAs** in consideration for Zurich issuing performance and payment bonds on two large projects: the Sugarmont Apartments project, a contract worth $62,750,000, and the **Station at Gardner Mill ("SGM") project**, a contract worth $38,242,184.[5]

The cited support for the factual finding regarding the SGM GIA is Footnote 23, which references the "SGM GIA, ECF No. 337-6; ECF No. 337-2 at ¶ 10; ECF No. 388 at 14 (not disputing contract price)."[6]  None of these citations supports a finding that Ms. Swenson signed the SGM GIA.

The document at "ECF No. 337-6" is a copy of the SGM GIA that does not include Ms. Swenson's signature.  The document at "ECF No. 337-2" is the Declaration of Paul Eaves.  In Paragraph 10 of Mr. Eaves Declaration, he cites to Attachment 4, which he identifies as a "true and correct version of the 2017 Gardner Mill GIA."  The Attachment 4 version of the SGM GIA is ECF No. 337-6, previously identified in the Court's Footnote 23, which does not include Ms. Swenson's signature.  The document at "ECF No. 388" is Ascent/Knowlton's summary judgment

---

[4] *See* Doc. 419.
[5] *Id.* at 4 (emphasis added).
[6] *Id.*, Footnote 23.

response brief, cited to show that Ascent and Knowlton did not dispute the contract price. Nothing in Footnote 23 supports a finding that Ms. Swenson signed the SGM GIA.

The Summary Judgment Order then states, "Knowlton and Swenson began divorce proceedings in 2017, but she nevertheless signed the 2017 GIAs."[7] The factual support cited for this conclusion of fact is Footnote 25, which cites "ECF No. 359 at 16."[8] The document at "ECF No. 359" is Ms. Swenson's Response to Zurich's Renewed Motion for Summary Judgment, which at page 16 discusses the divorce but nowhere mentions signing either the Sugarmont or SGM GIA.

The Summary Judgment Order then states, "She alleges, however, that Knowlton obtained her signature under duress and through fraud," with a reference in Footnote 26 to "*See generally id.*"[9] Again, there is no support for the finding that she signed either GIA.

Later, in the section of the Summary Judgment Order devoted to Zurich's claims against Swenson, the Court states, "According to Swenson, she signed the GIAs during a period after she informed him [Knowlton] that she wanted a divorce."[10] The factual support for this statement is the Court's Footnote 168, which cites "Decl. Shondell Swenson, ECF No. 359-2 at ¶¶ 46-47."[11] Paragraphs 46-47 of Ms. Swenson's Declaration (ECF No. 359-2) never state that she signed the SGM GIA, but only recite that Ms. Swenson discovered Knowlton's infidelity in May 2017 and sought a divorce. In fact, Ms. Swenson's Declaration states, "I did not sign those agreements."[12]

---

[7] *Id.* at 4-5.
[8] *Id.* at 5, Footnote 25.
[9] *Id.*, Footnote 26.
[10] *Id.* at 32.
[11] *Id.*, Footnote 168.
[12] Doc. 359-2 ¶ 34.

The Summary Judgment Order then recites circumstances where Knowlton demanded that Ms. Swenson sign a "signature page" twice in the summer of 2017,[13] but Ms. Swenson was clear that she never saw any agreement and had no idea what document the signature page referenced.[14] The Court acknowledges that no notary was present.[15]  The Summary Judgment Order then states that Ms. Swenson's "son Brandt (at the direction of Knowlton) told her to sign and notarize a new signature page because the signature page she had previously signed was not notarized."[16]  The cited evidence establishes that Ms. Swenson signed two separate signature pages (believing the second one to be a replacement for the first signature page), but it also establishes that Ms. Swenson never saw either of the GIAs to which the signature pages were ultimately attached.

The Summary Judgment Order then states, "Swenson does not dispute that she signed a document (twice) and does not accuse Zurich of being the party that threatened or tricked her."[17] The Court does not include a citation to the record to support its statement that Ms. Swenson "does not dispute that she signed a document (twice)."  In fact, she does dispute that she signed either GIA.  In her Declaration, she testified that (1) she "did not sign those agreements;" (2) that she only signed a one-page signature page unattached to any document; (3) that the one page she signed did not reference Sugarmont or SGM; (4) that she had never seen the Sugarmont or SGM GIAs; and (5) that when she signed the signature page the second time, she believed it was a replacement for the first signature page she signed, not a signature on a separate agreement.[18]

---

[13] Doc. 419 at 32.
[14] Doc. 359-2, ¶¶ 34-42, 67-78, 83-92.
[15] *See* Doc. 419 at 32.
[16] *Id.*
[17] *Id.* at 33.
[18] Doc. 359-2, ¶¶ 34-42, 67-78, 83-99.

The Court's Summary Judgment Order includes an additional footnote referencing Zurich's notice of errata. Footnote 181 states,

> It is true that Zurich originally attached a version of the 2017 GIA for the SGM project without Swenson's signature to its motion for summary judgment. *See* ECF No. 337-6. The court finds this omission immaterial as it later filed the corrected contract and there is no dispute that Zurich issued the bonds on the assumption that Swenson would sign the contract later.[19]

As discussed in greater detail below, Ms. Swenson believes that the submission of this purported signature page by Errata is legally deficient under Fed.R.Civ.P. 56.

There is no other support cited in the Summary Judgment Order for the Court's conclusive finding of fact that Ms. Swenson executed or agreed to the SGM GIA.

## ARGUMENT

### A.    Ms. Swenson requests reconsideration of the Court's finding that she executed and agreed to the SGM GIA.

Ms. Swenson asks the Court to reconsider its finding that she signed the SGM GIA. Because the Court issued its ruling on summary judgment, the relevant standard is the Rule 56 standard: drawing all reasonable inferences in Ms. Swenson's favor, is there any "genuine dispute" that Ms. Swenson signed the SGM GIA?[20]

---

[19] Doc. 419 at 34-35, Footnote 181.
[20] Fed. R. Civ. P. 56 (a); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

      **1.  There is no evidence that Ms. Swenson signed the SGM GIA or agreed to be bound by the terms of the SGM GIA.**

In its Summary Judgment Order, the Court stated as an established, undisputed fact that Ms. Swenson "signed the 2017 GIAs"[21] and that she "does not dispute that she signed a document (twice)."[22] None of these assertions is supported by any testimony or facts in the record.

As noted above, Ms. Swenson testified that she never saw or signed the SGM GIA.[23] There is no evidence that she was included in the negotiation of the SGM GIA or that Zurich provided her with a copy of the SGM GIA.[24] Neither Zurich, its broker Marsh, Ascent nor Knowlton ever produced a copy of the SGM GIA with Ms. Swenson's signature in discovery, which is why the copy attached to Zurich's Errata bears no Bates number.[25]

The most that can be said is that Ms. Swenson signed an isolated signature page on two separate occasions (fearing for her life), believing that the second signature was a replacement signature for the first signature.[26] The Summary Judgment Order then makes an unsupported leap of logic to conclude that Ms. Swenson's signature (under duress) on a lone sheet of paper (which nowhere referenced the Sugarmont or SGM projects) evidenced her agreement to enter into two separate eight-page contracts (which she never saw) to indemnify Zurich (with whom she had never communicated) in connection with millions of dollars of potential liability on two separate

---

[21] Doc. 419 at 5, 32.
[22] *Id.* at 33.
[23] *See* Doc. 359-2, ¶¶ 34-42, 67-78, 83-99.
[24] *See* Doc. 381-4, Holicky Depo. at 30:11-16, 31:8-19; Doc. 359-2, ¶¶ 41-42, 100-104.
[25] *See* Doc. 367-1 at Page 7 of 8; *see also* Doc. 442, ¶ 10.
[26] *See* Doc. 359-2, ¶¶ 34-42, 67-78, 83-99.

projects she knew nothing about and had never even heard of.[27]  There is no basis in the record to

support any of the basic elements of contract formation between Zurich and Ms. Swenson.

The Summary Judgment Order explained:

> Although Zurich issued the bonds for the SGM project before receiving Swenson's
> signature, the court finds there is no genuine issue that the bonds were needed
> urgently for project financing and were released only with the understanding that
> Zurich "would get Shondell's signature at a later date."  The GIA explicitly states
> that Swenson is bound to "the obligations in this Agreement, whether incurred
> before or after the execution of this Agreement …."[28]

Nothing in this explanation establishes or supports the conclusion that Ms. Swenson ever saw,

signed or agreed to the SGM GIA.

The Court relies upon the deposition testimony of Zurich's Rule 30(b)(6) witness,

Benjamin Holicky, but he did not testify that Zurich issued the bonds "only with the

understanding" that it would get Ms. Swenson's testimony later.  Mr. Holicky testified that Zurich

issued the bonds, knowing it did not have Ms. Swenson's signature, but with the understanding

that her signature would be provided later.[29]  But he further testified as follows:

> Q.    Did that raise any concerns that Ascent and Marsh had been unable to get
>       Shondell's signature on the agreement?
> A.    No.
> Q.    Did Zurich do anything to investigate why Shondell had not signed the
>       Gardner Mill agreement?
> A.    No.[30]

To the extent Zurich relied on its understanding that Ms. Swenson would sign the SGM

GIA in issuing the bond, Ms. Swenson did nothing to lead Zurich to that assumption.  Mr. Holicky

---

[27] *See* Doc. 359-2, ¶¶ 34-42, 67-78, 83-99; *see also* Doc. 381-4 at 30:11-16, 31:8-19.
[28] Doc. 419 at 34.
[29] *See* Doc. 381-4 at 102:5-105:21.
[30] *Id.* at 103:10-16.

testified that Zurich had no communication with Ms. Swenson in 2017, that Zurich never provided a copy of either GIA to Ms. Swenson, and that Zurich had no information regarding the circumstances under which Ms. Swenson purportedly signed the SGM GIA.[31]

But the most important part of Mr. Holicky's deposition was that Zurich never received a fully-signed, eight-page version of the SGM GIA with Ms. Swenson's signature. All Zurich received was a signed signature page, without any accompanying agreement, attached to an email from Knowlton to Holicky and Marsh's Tina Davis on July 28, 2017.[32] Holicky testified that there was no way to tie that signature page with Ms. Swenson's signature to the SGM GIA or the Sugarmont GIA or some other document:

> Q:  So if you look here at page 42, this appears to be an email from Tina Davis to you dated July 28, 2017; correct?
> A:  Yes.
> Q:  And if you scroll down and look at the attachments to this email, or **attachment**, it appears to be **a signature page**; is that correct?
> A:  **Yes**.
> Q:  Can you identify what this signature page is?
> A:  It's a signature page that had Brad Knowlton and Shondell's signatures.
> Q:  Okay. **Do you know whether this signature page is associated with a particular agreement**?
> A:  **I do not**.[33]

Mr. Holicky's admission that he could not tie the signature page he received on July 28, 2017 to any particular agreement is crucial because it is that signature page that Zurich relies upon as the operative signature page and attaches to its Notice of Errata on November 29, 2022.

---

[31] *See id.* at 30:11-16, 31:8-19, 105:18-106:12; *see also* Doc. 359-2, ¶¶ 100-104.
[32] *See* Doc. 381-4 at 105:18-106:12; Doc. 359-29.
[33] Doc. 381-4 at 105-106 (emphasis added).

### 2. Zurich's Notice of Errata is deficient as a matter of law.

There is no evidentiary basis for any version of the SGM GIA that purports to bear Ms. Swenson's signature.  Under Fed.R.Civ.P. 56(c)(2), Ms. Swenson is entitled to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Zurich never submitted admissible evidence of the SGM GIA bearing Ms. Swenson's signature or that she executed the SGM GIA.

As noted above, Zurich never produced a fully executed version of the SGM GIA with Ms. Swenson's signature during discovery in this matter.[34]  Even the versions of the SGM GIA attached to the Complaint and Zurich's motion for summary judgment lacked Ms. Swenson's signature, and Zurich was still looking for a fully executed copy of the SGM GIA in October 2021, more than three years after the documents were purportedly executed.[35]

Zurich relied on the Declaration of Paul W. Eaves to establish the factual basis for its motion for summary judgment.[36]  Under oath, Mr. Eaves identified himself as a surety claim professional for Zurich who "oversee[s] the administration of payment and performance bond claims" relating to dozens of Ascent's construction projects.[37]  Regarding the SGM GIA, Mr. Eaves testified under oath that "Ascent and the Individual Indemnitors [including Ms. Swenson] executed yet another GIA in favor of Zurich (the '2017 Gardner Mill GIA')."[38]  Mr. Eaves stated, "A true and correct version of the 2017 Gardner Mill GIA is attached hereto as **Attachment 4**."[39]

---

[34] *See* Doc. 442, ¶ 10.

[35] *See id.*

[36] Doc. 337-2.

[37] *Id.* ¶¶ 1-3.

[38] *Id.* ¶ 10.

[39] *Id.*

Mr. Eaves' Attachment 4 is a copy of the SGM GIA without Ms. Swenson's signature.[40]  To the extent there is admissible evidence of the SGM GIA with proper foundation, it is this version of the SGM GIA, authenticated by Mr. Eaves, and it lacks Ms. Swenson's signature.

In the Court's Summary Judgment Order, it relies on Zurich's submission of a separate version of the SGM GIA[41] with Zurich's November 29, 2022 notice of errata.[42]  Zurich's Errata is legally insufficient to introduce purported evidence – especially evidence that explicitly contradicts the competent evidence of the SGM GIA submitted by Mr. Eaves and Ms. Swenson's explicit denial that she ever signed the SGM GIA.  Rule 56(c)(4) requires that an "affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[43]

Zurich ignored this Rule entirely, instead substituting its counsel's representations to contradict those of Mr. Eaves.  Zurich's Errata stated that undersigned counsel, Mr. Cantrell, and not Mr. Eaves, "became aware of an error that requires correction."[44]  Mr. Cantrell noted that the SGM GIA submitted with Zurich's motion for summary judgment lacked Ms. Swenson's signature, and Mr. Cantrell proposed to substitute a different version including her signature.  Mr. Cantrell then represented that the version of the SGM GIA attached to the Errata (which was never produced in discovery and lacked a Bates stamp) is the correct version of the GIA.[45]

---

[40] *See* Doc. 337-6.
[41] *See* Doc. 419 at 34-35, Footnote 181.
[42] *See* Doc. 367.
[43] Fed. R. Civ. P. 56(c)(4)
[44] Doc. 367 at 1.
[45] *See id.* at 2.

This is no basis for the Court to conclude, on summary judgment, that Ms. Swenson signed the SGM GIA submitted with Zurich's Errata.  Mr. Cantrell, as counsel, cannot correct the sworn statement of Zurich's chosen representative and substitute another version of the SGM GIA as the correct version.  He has no personal knowledge to support any representation to the Court regarding the authenticity of the GIA he presented as the correct version.  Documents not properly authenticated cannot be considered as a basis for summary judgment.[46]

A quick review of the document attached to the Errata appears to be the original version of the SGM GIA with the signature page Knowlton emailed to Holicky and Tina Davis on July 28, 2017 attached.  Holicky testified that there was no way to tie that signature page to the SGM GIA.[47] When asked why Zurich's claims department's official copy of the SGM GIA lacked Ms. Swenson's signature, Mr. Eaves testified, "I assume it was saved in the due course of business by the underwritten."[48]

Moreover, there are no Bates numbers on the version of the SGM GIA attached to Zurich's Errata, so it is clear that Zurich never produced this document in discovery.[49]  There is no testimony in the record that the version of the SGM GIA submitted with Zurich's Errata is authentic -- and Mr. Cantrell's representations in Zurich's Errata are legally insufficient to establish authenticity or change Mr. Eaves' duly sworn representations regarding the correct version of the SGM GIA.

---

[46] *See In re Harris*, 209 B.R. 990, 996 (B.A.P. 10th Cir. 1997); *Fields v. Baseline Prop., LLC*, 2020 WL 10790293, *1-2 (W.D. Okla. July 10, 2020).
[47] *See* Doc. 381-4 at 105:18-106:12.
[48] Doc. 359-3 at 28:11-29:25.
[49] *See* Doc. 442, ¶ 10.

The only admissible evidence of the SGM GIA is the version submitted by Mr. Eaves, and it lacks Ms. Swenson's signature.

### 3.  The factual accounts of the execution of the SGM GIA are contradictory.

There is no support in this case for a finding that the basic elements of contract formation between Ms. Swenson and Zurich are satisfied.

Ms. Swenson testified that she never saw the SGM GIA.[50]  She testified that Knowlton presented her with a single, blank signature page unattached to any agreement, and that she signed it in fear for her life.[51]  She testified that a few weeks later, her son presented her with an identical unsigned signature page that he represented was needed to replace the first one.[52]  Ms. Swenson's clear testimony is that to the extent she signed anything, she believed it was a single document.[53]

Ms. Swenson's son, Brandt, testified similarly.[54]  There were no communications at all in 2017 between Ms. Swenson and Zurich or Marsh about anything, let alone the SGM GIA.[55]

The signature page relied upon by Zurich was emailed by Knowlton to Zurich's Ben Holicky and Marsh's Tina Davis on July 28, 2017.[56]  The email attachment was the single signature

---

[50] *See* Doc. 359-2, ¶¶ 33-42, 75, 98-100; *see also* Doc. 359-5, Swenson Depo. 82:2-14, 107:11-108:14.
[51] *See* Doc. 359-2, ¶¶ 35-37, 46-53, 57-58, 67-75; *see also* Doc. 359-5, Swenson Depo. 83:24-85:3.
[52] *See* Doc. 359-2, ¶¶ 83-88, 98; *see also* Doc. 359-5, Swenson Depo. 99:7-100:5, 107:11-108:14.
[53] *See* Doc. 359-2, ¶¶ 36, 85, 87, 98; *see also* Doc. 359-5, Swenson Depo. 83:24-85:3, 107:11-108:14.
[54] *See* Doc. 359-8, ¶¶ 16-23.
[55] *See* Doc. 359-2, ¶¶ 42, 100-104; Doc. 381-4 30:11-16, 31:8-19.
[56] *See* Doc. 359-29.

page, with no agreement attached, and Mr. Holicky testified that there was no way to tie the signature page to the SGM GIA or the Sugarmont GIA or any other document.[57]

Knowlton's account contradicts every other account of the signatures on the SGM GIA. Knowlton testified as follows:

> Q:   Just for reference, what is Exhibit 3?
> A:   Exhibit 3 is the indemnification agreement for, if I remember right, Station for Gardner Mill.
> Q:   Have you looked at the document to confirm that Exhibit 3 is the Gardner Mill indemnity agreement?
> A:   I'm looking at it.[58]

***

> Q:   What was your understanding, Brad, about getting Shondell's signature on Exhibit 3?
> A    My understanding is that we were invited to have our indemnitors back on. And I took the entire agreement, gave it to Shondell, said, "We need to sign these." And I left it with her and she came back, signed it -- I think on that one, she signed it a different day than I did and different notaries. And so I can't really speak to that, but she signed it days after I did to a different notary with different witnesses.
> Q:   So your testimony is **you took a copy of the Exhibit 3 to Shondell**?
> A:   Yes.
> Q:   And where did you take that to her?
> A:   **To our home**.
> Q:   Okay. And **what was the date that you took that to Shondell**?
> A:   Oh, gosh. I don't remember that. **Sometime between** the date we were given it, which it says **May 17th**, and somewhere there will be a stamped received copy, but I certainly don't have the date. Sometime between then **and when I signed it, on July 13th, she was given it**. And **she signed on July 19th** to a different notary that I don't even know who is.[59]

***

> Q:   Well my question to you now is: Did you read Brandt's declaration?

---

[57] *See* Doc. 381-4 at 105:18-106:12.
[58] Doc. 359-7 at 204:19-24.
[59] *Id.* at 210:20-211:21 (emphasis added).

A:     I can't recall at this moment.
Q:     Okay.
A:     But I do know for a fact Brandt was never invited to be in the process of the indemnification.  No documents for indemnification were ever sent to Shondell through Brandt.  I took them home myself directly.  I gave them myself directly to Shondell.  So anything to the contrary is not true.
Q:     Okay fair enough.
A:     She returned them by herself to the office.  I didn't return her copy to the office.[60]

This account is demonstrably false.  Knowlton says he gave it to Ms. Swenson between May 17 and July 13, 2017, but he first received a copy of the SGM GIA by email on June 30.[61] Ms. Swenson had already moved out of the house on June 26, four days before Knowlton received a copy of the SGM GIA., and Knowlton testified there was no contact between Ms. Swenson and Knowlton after she moved out of the house.[62]  Knowlton's timing simply makes no sense.

Even if Knowlton's timing was reliable, which it is not, Knowlton says he gave Ms. Swenson the full SGM GIA for signature between May 17 and July 13, when he signed it.  If he gave it to her before he signed it, then he gave her a blank signature page – without his signature or her signature.  That would mean that the version Ms. Swenson signed on July 19, 2017 should have been blank on the top half, where Knowlton's signature was required.  And the version Knowlton signed on July 13 should have been blank on the bottom half because Ms. Swenson purportedly signed on July 19, four days after Knowlton signed it.  There should have been two separate signature pages (one signed by Knowlton and one by Ms. Swenson), not a single signature page with both of their signatures.

---

[60] *Id.* at 213:5-20.
[61] *See* Doc. 359-20.
[62] *See* Doc. 359-2 ¶ 79; Doc. 359-7 at 195:8-196:7.

The fact that Zurich's signature page submitted with the Errata includes both Knowlton's and Ms. Swenson's signatures on the same single page suggests that either Knowlton's testimony is false, or someone cut-and-pasted two separate signature blocks onto a single page after the fact. None of Zurich's accounts of the signatures on the SGM GIA makes any sense, and Ms. Swenson denies that she ever saw or signed the SGM GIA.  Summary judgment on this record is improper.

**REQUEST FOR RELIEF**

For the foregoing reasons, Shondell Swenson respectfully requests that this court:

1.      Grant this Motion for Reconsideration pursuant to Fed.R.Civ.P. 54(b);

2.      Vacate its September 28, 2023 Order granting Zurich summary judgment as against Shondell Swenson for its claims based upon the SGM-GIA;

3.      Deny the judgment of Zurich's Joint and Several liability claim in the amount of $7,119,450.50 against Shondell Swenson;

4.      Grant such other and further relief as the court deems just and proper.

RESPECTFULLY SUBMITTED this 2nd day of July, 2025.

**WILLIAMS BLACKHURST TERHUNE PLLC**

*/s/  Dennis K. Blackhurst*
Jon M. Memmott (No. 2235)
5505 East McLellan, No. 36
Mesa, Arizona 85205

Dennis K. Blackhurst *(pro hac vice)*
701 North 44th Street
Phoenix, Arizona 85008
*Attorney for Defendant Shondell Swenson*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I served a true and correct copy of the foregoing document via the Court's e-filing system and/or email upon all counsel of record.


*/s/  Dennis K. Blackhurst*
Dennis K. Blackhurst