Jon M. Memmott (No. 2235)
**Memmott & Associates**
5505 East McLellan, No. 36
Mesa, Arizona 85205
jon@memmottlaw.com

Dennis K. Blackhurst *(pro hac vice)*
L. Richard Williams *(pro hac vice)*
**WILLIAMS BLACKHURST TERHUNE PLLC**
701 North 44th Street
Phoenix, Arizona 85008
dblackhurst@wbt.esq
rwilliams@wbt.esq

*Attorneys for Defendant Shondell Swenson*

### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND,<br><br>Plaintiff,<br><br>v.<br><br>ASCENT CONSTRUCTION, INC., *et al.*,<br><br>Defendants. | **DEFENDANT SWENSON'S SECOND MOTION FOR RECONSIDERATION**<br><br>Case Number: 1:20-cv-00089-RJS<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Cecelia M. Romero |

Defendant Shondell Swenson respectfully moves the court, pursuant to Federal Rule of Civil Procedure 54(b), to reconsider its September 28, 2023 Summary Judgment Order (Doc. 419) granting summary judgment in favor of Zurich American Insurance Company and Fidelity Deposit Company of Maryland ("Zurich") against Ms. Swenson. Reconsideration is appropriate to correct a clear error of law – specifically that Ms. Swenson is liable on either the Sugarmont or Station at Gardner Mill ("SGM") GIA. Ms. Swenson previously filed a Motion for Reconsideration (Doc. 553) on July 2, 2025, arguing separate grounds for reconsideration of the Court's entry of summary judgment against Ms. Swenson on the SGM GIA.

## LEGAL STANDARD

Rule 54(b) provides:

When an action presents more than one claim for relief … the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties …. Otherwise, **any order or other decision**, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and **may be revised at any time before the entry of a judgment** adjudicating all the claims and all the parties' rights and liabilities.[1]

A Rule 54(b) motion for reconsideration is appropriate to "correct a clear error or prevent manifest injustice," including situations in which the Court has "misapprehended the facts, a party's position, or the controlling law."[2]

In the Tenth Circuit, district courts are generally "free to reconsider their earlier interlocutory orders" or those of a previously assigned judge.[3] A "district court always has the inherent power to reconsider its interlocutory rulings before final judgment is entered."[4] A request for reconsideration is timely "at any time before the entry of judgment."[5]

Ms. Swenson respectfully requests that the Court reconsider its entry of Summary Judgment against Ms. Swenson under this standard.

---

[1] Fed. R. Civ. P. 54(b) (emphasis added).
[2] *King v. IC Group, Inc.*, 743 F.Supp.3d 1346, 1351-52 (D. Utah 2024) (Shelby, J.); *Gale v. Uintah Cnty.*, 2021 WL 4553218, * 3 (D. Utah Oct. 5, 2021) (Shelby, J.).
[3] *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (law of the case "does not bind a judge to follow rulings in the same case by another judge"); *see also Wilson v. Merrell Dow Pharm., Inc.*, 160 F.3d 615, 627-28 (10th Cir. 1998) (approving decision to reconsider previous judge's ruling); *Est. of Jensen v. Duchesne Cnty*, 2023 WL 5432200, *5 (D. Utah Aug. 23, 2023) (rejecting argument that "successor judge is discouraged from reconsidering the decisions of the transferor judge" as "foreclosed by [Tenth Circuit] precedent") (*citing Rimbert*, 647 F.3d at 1251).
[4] *Est. of Jensen*, 2023 WL 5432200, *5.
[5] *Luo*, 71 F.4th at 1298 (court "may revise an interlocutory order 'at any time before the entry of a judgment'") (*quoting* Fed. R. Civ. P. 54(b)).

## THE SUMMARY JUDGMENT ORDER

On September 28, 2023, the District Court granted partial summary judgment on Zurich's claims against Ms. Swenson and other defendants on two indemnity agreements, the Sugarmont GIA and SGM GIA, premised on Ms. Swenson's purported admission that she signed the 2017 Sugarmont GIA and SGM GIA.[6] Ms. Swenson's July 2, 2025 Motion for Reconsideration detailed her arguments that the Court's findings of fact with respect to Ms. Swenson's purported execution of the two 2017 indemnity agreements were unsupported by the citations to the record.[7]

The Summary Judgment Order noted Ms. Swenson's argument that Defendant "Knowlton obtained her signature under duress and through fraud."[8] The Summary Judgment Order recited that Knowlton demanded that Ms. Swenson sign a "signature page" twice in the summer of 2017,[9] but Ms. Swenson was clear that she never saw any agreement and had no idea what document the signature pages referenced.[10] The Court acknowledged that no notary was present.[11] The Summary Judgment Order then stated that Ms. Swenson's "son Brandt (at the direction of Knowlton) told her to sign and notarize a new signature page because the signature page she had previously signed was not notarized."[12] The Summary Judgment Order then stated, without citation to the record, that "Swenson does not dispute that she signed a document (twice)…."[13]

---

[6] *See* Doc. 419 at 4-5, 32-33.
[7] *See* Doc. 553 at 2-6.
[8] Doc. 419 at 5.
[9] *Id.* at 32.
[10] Doc. 359-2, ¶¶ 34-42, 67-78, 83-92; Doc. 359-5, Swenson Depo. 81:9-82:15, 83:24-87:2, 93:16-94:7, 97:14-100:15, 102:25-104:23, 107:11-108:14, 120:12-19.
[11] *See* Doc. 419 at 32.
[12] *Id.*
[13] *Id.* at 33.

Ms. Swenson disputes that she signed either GIA. In her Declaration, she testified that (1) she "did not sign those agreements;" (2) she only signed a one-page signature page unattached to any document; (3) the one page she signed did not reference Sugarmont or SGM; (4) she had never seen the Sugarmont or SGM GIAs; and (5) when she signed the signature page the second time, she believed it was a replacement for the first signature page she signed, not a signature on a separate agreement.[14] The evidence establishes that Ms. Swenson signed two separate signature pages (believing the second one to be a replacement for the first signature page), but she never saw either of the GIAs to which the signature pages were ultimately attached.[15] As discussed in Ms. Swenson's first Motion for Reconsideration and Reply, she believes there is a genuine issue of disputed fact regarding her execution of the two GIAs that should preclude summary judgment.

**ARGUMENT: The Summary Judgment Order misapplies controlling Utah law.**

Ms. Swenson asks the Court to reconsider its entry of summary judgment against her on both the Sugarmont GIA and the SGM GIA. Because the Court issued its ruling on summary judgment, the relevant standard is the Rule 56 standard: drawing all reasonable inferences in Ms. Swenson's favor, is there any "genuine dispute" as to the formation of a contract between Zurich and Ms. Swenson on either the Sugarmont or SGM GIA?[16]

Ms. Swenson testified that in 2017, after she demanded a divorce, Knowlton came to her, threatening her life and demanding that she sign a single signature page unattached to any

---

[14] Doc. 359-2, ¶¶ 34-42, 67-78, 83-99.
[15] *See id.*; *see also* Doc. 359-5, Swenson Depo. 81:9-82:15, 83:24-87:2, 93:16-94:7, 97:14-100:15, 102:25-104:23, 107:11-108:14, 120:12-19.
[16] Fed. R. Civ. P. 56 (a); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

4

document.[17] Ms. Swenson had no idea what document the signature page related to, and the signature page did not reference any other document. Fearing for her life, she signed. She never saw the Sugarmont GIA to which this signature page was ultimately attached. It is undisputed that there was no witness or notary present when she signed the signature page.[18]

Later, Ms. Swenson's son presented her with another single signature page unattached to any agreement. He informed Ms. Swenson that he needed her to sign it as a replacement for the first signature page she signed, this time in front of a notary. Again, Ms. Swenson had no idea what the signature page related to, but she believed she was providing a replacement signature page for the document she had previously signed.[19] She never saw either GIA, and it is undisputed that she never communicated with Zurich or any of its agents with respect to any GIA.[20]

The Court's Summary Judgment Order analyzed the facts under Sections 164, 175 and 176 of the Restatement of Contracts, focusing on the fact that Ms. Swenson "does not accuse Zurich of being the party that threatened or tricked her."[21] The Court reasoned that duress or fraud could not defeat the GIAs because Zurich was "an innocent third party transacting at arm's length" that should be able to "rely on a signed, witnessed, and notarized contract without questioning every aspect of its formation."[22] The Court rejected Ms. Swenson's duress defense because she was threatened or misled by Knowlton; because the duress or trick was not imposed "*by the other*

---

[17] *See* Doc. 359-2, ¶¶ 33-42, 46-53, 67-78.
[18] *See id.* ¶¶ 76-78; Doc. 419 at 32.
[19] *See* Doc. 359-2, ¶¶ 83-91.
[20] *See id.* ¶¶ 100-106.
[21] Doc. 419 at 33-34.
[22] *Id.* at 33.

*party*," Zurich, the defense was inapplicable against Zurich, which purportedly relied on the signed signature page in good faith.[23]

### 1. The Court overlooked Swenson's argument that both the Sugarmont GIA and SGM GIA are void under Sections 174 and 163 of the Restatement of Contracts.

Reconsideration is appropriate to "correct a clear error or prevent manifest injustice," including situations in which the Court has "misapprehended the facts, a party's position, or the controlling law."[24] Ms. Swenson respectfully submits that the Court's Summary Judgment Order misapprehends controlling law, in particular Restatement Sections 163 and 174. The Summary Judgment Order cited Restatement §§ 164, 175-176 and ignored Sections 163 and 174 entirely, even though those provisions were argued by Ms. Swenson in her summary judgment briefing.[25]

Section 174 is the applicable section of the Restatement:

> If conduct that appears to be a manifestation of assent by a party who does not intend to engage in that conduct is physically compelled by duress, the conduct is not effective as a manifestation of assent.[26]

The Restatement is clear that "a party's conduct is not effective as a manifestation of assent if he does not intend to engage in it," and the essence of this type of duress is that "a party is compelled by physical force to do an act he has no intention of doing."[27] The result of this type of duress "is that there is no contract at all, or a 'void contract,' as distinguished from a voidable one."[28]

---

[23] *Id.*
[24] *King v. IC Group, Inc.*, 743 F.Supp.3d 1346, 1351-52 (D. Utah 2024) (Shelby, J.); *Gale v. Uintah Cnty.*, 2021 WL 4553218, * 3 (D. Utah Oct. 5, 2021) (Shelby, J.).
[25] *See* Doc. 359 at 29-38.
[26] Restatement (Second) of Contracts § 174 (1981).
[27] *Id.*, cmt. a.
[28] *Id.*

6

In its Summary Judgment Order, the Court noted that the Utah Supreme Court's *Andreini* opinion endorsed Sections 175 and 176 of the Restatement, but the same opinion also approved of Section 174.[29] It is Section 174 that applies and controls here. Ms. Swenson testified that Knowlton demanded her signature and threatened to kill her and bury her body in concrete on one of his construction projects.[30] She testified that she signed the signature page because she literally feared for her life.[31] If Section 174 applies, the Sugarmont GIA is void.

Similarly, Section 163 provides:

> If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent.[32]

As with Section 174, a contract subject to Section 163 is "[v]oid rather than voidable."[33]

Ms. Swenson testified that when Knowlton demanded Ms. Swenson's signature, he threatened to kill her and told her the document was none of her business and did not involve her in any way, but people would be kept from work if she did not sign.[34] At summary judgment, where all inferences are drawn in her favor, Ms. Swenson has at least raised a material issue of fact as to whether Restatement Sections 163 or 174 apply, which would render the GIAs void.

---

[29] Doc. 419 at 33, *citing Andreini v. Hultgren*, 860 P.2d 916 (Utah 1993); *see also Andreini*, 860 P.2d at 921 (approving "Restatement (Second) of Contracts §§ 174-76").
[30] *See* Doc. 359-2, ¶¶ 46-53, 57.
[31] *See id.* ¶¶ 67-73, 81, 88.
[32] Restatement (Second) of Contracts § 163.
[33] *Id.*, cmt. c.; *see also Brown v. Union Pac. R.R. Co.*, 290 P. 759, 761-62 (Utah 1930); *Bennett v. Bowen*, 238 P. 240, 244 (Utah 1925).
[34] *See* Doc. 359-2, ¶¶ 67-71; Doc. 359-5, Swenson Depo. 87:14-88:8.

## 2. Controlling Utah Supreme Court precedent establishes that the Sugarmont and SGM GIAs are void.

The conclusion that the Sugarmont GIA is void (as opposed to voidable) is supported by controlling Utah Supreme Court precedent. In *First Nat'l Bank of Grand Junction v. Osborne*, the plaintiff bank sought to enforce a Loan Guaranty Agreement ostensibly signed by the defendant, Hudson, who disputed that he ever saw or signed the guaranty.

> Hudson does not deny that the signature is his. He says it looks like his signature, but if it is, it does not belong on that paper. He testified positively that he never at any time agreed to be a guarantor for Osborne or for anybody else for $60,000 or any other amount. He has no explanation as to how his signature was procured; but he says it had to be obtained by trick or ruse.[35]

The plaintiff bank had no role in obtaining the signature, no notice of any fraud and extended the loan in reliance on Hudson's guaranty.[36]

On appeal, the Supreme Court reversed the trial court's entry of directed verdict against Hudson on the guaranty. The Supreme Court disagreed with the trial court's analysis of the matter as a fraud case, instead viewing it as a contract case in which "the plaintiff has the burden of showing that Hudson agreed to be a guarantor for the Osborne note."[37] The Supreme Court characterized the dispute as an issue of contract formation:

> The contract of guaranty must be valid in the sense that the requisite elements of a contract exist, that is, there must be proper parties with the required capacity, mutual assent, and consideration…. And even though all of these elements are

---

[35] *First Nat'l Bank of Grand Junction v. Osborne*, 503 P.2d 440, 441 (Utah 1972). Ms. Swenson did not cite or identify the *Osborne* opinion in her summary judgment briefing. *Osborne* has never been cited, and it was not included in the Bible of reference books regarding guaranty and indemnity contracts. *See* Marilyn Klinger, *et al.*, *The Surety's Indemnity Agreement: Law and Practice* (2d ed. 2008). Because it is directly applicable and controlling, Ms. Swenson requests that the Court consider the *Osborne* opinion now.
[36] *See Osborne*, 503 P.2d at 442.
[37] *Id.*

present, **the guaranty is not enforceable if the mutual assent was procured through mistake or imposition practiced upon the guarantor**.[38]

The Supreme Court reversed the trial court's entry of directed verdict in favor of the bank on the guaranty, finding disputed issues of fact for the jury. "If Hudson was imposed upon to sign a paper which he never intended to sign; or if he did not know his signature was being affixed to the Loan Guaranty Agreement, **then there was no contract at all** and **it would not matter whether the bank was a party to the obtaining of the signature**."[39]

Similarly, in *Tinley v. Poly-Triplex Techs., Inc.*, the court addressed a dispute in which a hand-written contract bore the signature of the defendant, but the defendant swore he never received or saw the contract until he was sued.[40] The court denied summary judgment, stating,

> Since whether or not a contract was ever executed goes to the merits of the controversy, the allocation of power to decide these facts implicates the right to trial by jury…. The inferences to be drawn from Defendants' circumstantial evidence suggesting that the Tinley Agreement never existed prior to this lawsuit, as well as the credibility of the parties' testimony regarding the existence of the Tinley Agreement, are questions for the jury to decide …[41]

The Court's Summary Judgment Order was explicitly premised on the fact that Zurich did not pressure or trick Ms. Swenson into signing either of the GIAs, and Zurich had no notice of the Knowlton's duress or misrepresentation, so it was reasonable for Zurich to rely on the GIAs in issuing the bonds.[42] And that is a fair analysis under Sections 175 and 176 of the Restatement.

---

[38] *Id.* (*quoting* 38 Am.Jur.2d Guaranty, Section 55; emphasis added).
[39] *Id.*, 503 P.2d at 442-443 (emphasis added).
[40] *Tinley v. Poly-Triplex Techs., Inc.*, 2009 WL 812150, *2 (D. Colo. Mar. 26, 2009).
[41] *Id.* at *7.
[42] *See* Doc. 419 at 33-34. Zurich's witness, Benjamin Holicky, specifically testified that this was not the case – Zurich knew it did not have Ms. Swenson's signature when it issued the SGM GIA. *See* Doc. 381-4 at 30:11-16, 31:8-19, 102:5-106:12.

But the Court overlooked Ms. Swenson's invocation of Section 174, which is directly supported by the Supreme Court's opinion in *Osborne*. Under those authorities, Ms. Swenson never assented to either GIA, both of which are void and unenforceable against her.

In its Summary Judgment Order, the Court opined that Zurich ought to be able to rely on a signed and notarized document.[43] But anyone who has co-signed on a car loan knows the paperwork required is extensive, and banks routinely require guarantors to execute documents in person. Zurich is a multi-billion dollar company. It can choose to rely on third parties to obtain signatures on its indemnity agreements, but by doing so it assumes risks associated with delegating the process. The Court readily acknowledged that the circumstances regarding Ms. Swenson's signatures on the GIAs were "disturbing."[44] Yet, with Brad Knowlton filing for bankruptcy protection and potentially headed to jail, and with Ascent already under Zurich's control, it appears that the only party who will be pursued on the GIA liabilities is Ms. Swenson, who signed blank signature pages in literal fear for her life and without ever seeing an indemnity agreement or ever even knowing anything about the Sugarmont or SGM projects.

## Conclusion

Ms. Swenson respectfully submits that the Court reconsider its Summary Judgment Order in light of Sections 163 and 174 of the Restatement and the *Osborne* and *Tinley* decisions. Because the Sugarmont GIA was void under Section 174 and applicable law, the Court's Summary Judgment Order constitutes clear error and is subject to reconsideration.

---

[43] *See* Doc. 419 at 33.
[44] *See id.*

RESPECTFULLY SUBMITTED this 19th day of August, 2025.

                                              **WILLIAMS BLACKHURST TERHUNE PLLC**

                                              */s/ Dennis K. Blackhurst*
                                              Jon M. Memmott (No. 2235)
                                              5505 East McLellan, No. 36
                                              Mesa, Arizona 85205

                                              Dennis K. Blackhurst *(pro hac vice)*
                                              701 North 44th Street
                                              Phoenix, Arizona 85008
                                              *Attorney for Defendant Shondell Swenson*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2025, I served a true and correct copy of the foregoing document via the Court's e-filing system and/or email upon all counsel of record.

                                              */s/ Dennis K. Blackhurst*
                                              Dennis K. Blackhurst